TUXIS-OHR'S, INC. *v.* LOUIS GHERLONE ET AL.
(AC 22392)

Lavery, C. J., and Foti and Dupont, Js.

Argued January 13—officially released April 1, 2003

*Vincent T. McManus, Jr.*, for the appellant (plaintiff).

*Bradley K. Cooney*, for the appellees (named defendant et al.).

*Opinion*

FOTI, J. The defendants[1] appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Tuxis-Ohr's, Inc., doing business as Astro Oil. The court concluded, on the basis of equitable subrogation, that the defendant corporation, Louis Gherlone Tree Farms and Excavating, Inc. (corpora-

---

[1] Named as defendants were Louis Gherlone Tree Farms and Excavating, Inc., also known as Louis Gherlone Excavating, Inc., as well as its president, Louis Gherlone, and its secretary, Catherine Gherlone, as joint guarantors of the corporation's debt. Prior to trial, Linda Gherlone was substituted as a defendant in place of Catherine Gherlone. Thereafter, the action was withdrawn as against Catherine Gherlone.

tion), is indebted to the plaintiff because the plaintiff paid certain state fuel oil taxes for which the corporation had the primary obligation to pay. The court further concluded that the defendants Louis Gherlone and Linda Gherlone are personally indebted under a guarantee to the plaintiff for the corporation's debts.[2] The defendants claim on appeal[3] that the court's conclusions were improper because (1) General Statutes § 12-458 places the legal burden on the plaintiff to assess, collect and pay such taxes, and the plaintiff failed to comply with its statutory obligations, (2) there was no legal basis for the court's finding that the defendants should have marked "off-road use" on the fuel delivery tickets that were submitted to the plaintiff each time the defendants obtained number two heating oil and (3) the plaintiff's failure to include the required taxes in its invoice bills to the defendants during the last four years precluded the corporation from filing a claim for tax refunds to which it would have been entitled. We affirm the judgment of the trial court.

The court found the following facts. The plaintiff is a wholesale distributor of number two heating oil. Number two heating oil is subject to state taxes when used for the purpose of fueling off-road heavy machinery; however, it is exempt from such taxes when used to heat homes. On October 25, 1995, for the purpose of securing credit from the plaintiff for fuel oil sales to the corporation, Louis Gherlone and Linda Gherlone executed a personal guarantee for any debts incurred by the corporation to the plaintiff. The plaintiff, through its president, James Vitale, entered into an agreement with the defendants to sell oil to the corporation. The

---

[2] The defendants do not challenge the validity of the personal guarantee or its application by the court.

[3] The claims as stated in the defendants' statement of issues do not correspond to the analysis presented in their brief. We have interpreted the defendants' claims, therefore, in a manner consistent with the arguments and analyses presented in their brief.

parties formed an understanding that the primary purpose for the oil would be to fuel the corporation's off-road machinery—a taxable usage under state law.

On the basis of Louis Gherlone's conversations with Vitale, the defendants knew or should have known that their usage of the number two heating oil was taxable. They also knew or should have known that the fuel delivery tickets, which the defendants' agent was required to sign when obtaining oil from the wholesale delivery terminal, needed to be marked with the notation "off-road use." Such a notation on the fuel delivery tickets was necessary to alert the plaintiff, for the purpose of proper billing, whether state taxes needed to be collected on a particular sale.

From 1995 through 1999, the corporation obtained number two heating oil from the plaintiff. It used the oil primarily for the taxable purpose of fueling its off-road excavating machines.[4] The defendants failed to ensure that their agent followed the procedure for properly marking the delivery tickets as "off-road use." Consequently, the plaintiff did not include the required state taxes for off-road usage when billing the corporation for the oil.

The invoices that the plaintiff generated and sent to the defendants were all marked "dyed diesel fuel, nontaxable use only, penalty for taxable use." The fuel delivery tickets and signs on the fuel pumps at the terminal from which the corporation obtained the number two heating oil also contained similar warnings noting a penalty for taxable usage. Between 1995 and 1999, the corporation received no less than thirty-nine invoices from the plaintiff, each clearly noting that the fuel purchased was number two heating oil and that there was a penalty for taxable use. The defendants

---

[4] Only a small portion of the oil was used for the nontaxable purpose of home heating.

never attempted to notify the plaintiff that the billing was incorrect in any way.

The plaintiff was subject to regular periodic audits by the department of revenue services. In December, 1999, the department conducted an audit that resulted in an assessment of state gross receipt tax of $3666.70 and a state diesel fuel tax of $26,824.68 on the plaintiff's account with the corporation. After adjustments, the plaintiff paid $23,382.32 to the state for the corporation's account as the combined taxes assessed against the plaintiff by the department.

Despite requests from the plaintiff, the defendants refused to reimburse the plaintiff. Consequently, the plaintiff filed a two count amended complaint against the defendants. Count one alleged that the corporation was liable for reimbursement of the taxes paid, and count two asserted the liability of the Gherlones under the valid personal guarantee.[5] The court rendered judgment in favor of the plaintiff against the corporation in the amount of $23,382.32 plus interest of $3721.49 pursuant to General Statutes § 37-3a, and jointly and severally against the individual defendants in the amount of $23,382.32 plus interest of $6418.75 and attorney's fees of $13,850 pursuant to the terms of the personal guarantee.[6] This appeal followed.

Before addressing the defendants' specific claims, we first set forth our standard of review. "With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate." *Empire Paving, Inc.* v. *Milford,* 57 Conn. App. 261, 265, 747 A.2d 1063 (2000). "A factual finding is clearly erroneous when it is not

---

[5] By its terms, the guarantee extended liability to interest, attorney's fees and costs associated with the plaintiff's effort to collect debts due.

[6] We note that the defendants neither sought review of the court's determination of the amount of debt owed to the plaintiff nor contested the interest awarded.

supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 717, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001).

"The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Aubin* v. *Miller*, 64 Conn. App. 781, 786, 781 A.2d 396 (2001).

I

The defendants first claim that it was improper for the court to conclude that the plaintiff was entitled to reimbursement by the defendants because § 12-458[7]

[7] General Statutes § 12-458 provides in relevant part: "(a) (1) Each distributor shall, on or before the twenty-fifth day of each month, render a return to the commissioner. Each return shall be signed by the person required to file the return or by his authorized agent but need not be verified by oath. Any return required to be filed by a corporation shall be signed by an officer of such corporation or his authorized agent. Such return shall state the number of gallons of fuel sold or used by him during the preceding calendar month, on forms to be furnished by the commissioner, and shall contain such further information as the commissioner shall prescribe. The commissioner may make public the number of gallons of fuel sold or used by the distributor, as contained in such report, notwithstanding the provisions of section 12-15 or any other section. For purposes of this section, fuel sold shall include but not be limited to the transfer of fuel by a distributor into a receptacle from which fuel is supplied or intended to be supplied to other than such distributor's motor vehicles.

"(2) On said date and coincident with the filing of such return each distributor shall pay to the commissioner for the account of the purchaser or consumer a tax (A) on each gallon of such fuels sold or used in this state

places the legal burden on the plaintiff to assess, collect and pay to the state any taxes that were applicable to the subject transactions and that the plaintiff failed to comply with its statutory obligations. We disagree.

The interpretation of a statute, or its applicability in a particular action, presents a question of law for the court, and our review, therefore, is plenary. *Original Grasso Construction Co.* v. *Shepherd*, 70 Conn. App. 404, 418, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). We conclude that our Supreme Court's decision in *Wesson, Inc.* v. *Hychko*, 205 Conn. 51, 529 A.2d 714 (1987), is dispositive of the defendant's first claim.

The defendants correctly assert that § 12-458 applies to the subject fuel oil transactions and that along with General Statutes § 12-457,[8] it places the responsibility on distributors to assess, collect and pay the appro-

---

during the preceding calendar month . . . .

* * *

"(4) Each distributor, when making a taxable sale, shall furnish to the purchaser an invoice showing the quantities of fuel sold, the classification thereof under the provisions of this chapter and the amount of tax to be paid by the distributor for the account of the purchaser or consumer. . . ."

[8] General Statutes § 12-457 provides: "Each distributor shall keep an accurate record of the number of gallons of such fuels purchased, manufactured, compounded or received by him, the date of any such purchase and the number of gallons sold or used by him. He shall deliver, with each consignment or delivery of such fuels to any purchaser within this state, a written statement of the names and addresses of the vendor and vendee, the number of gallons sold and the date of sale and delivery. Such written statement shall set forth whether or not the required state tax has been charged thereon. Each such record and such statement shall be preserved by such distributor and such purchaser, respectively, for a period of at least three years and shall be offered for inspection upon demand of the commissioner or any officer or agent designated by him. The commissioner shall cause such records and statements to be regularly audited as he shall prescribe and each distributor shall satisfactorily account for all such fuels as have been sold or used by him. Any such fuels unaccounted for by the distributor for which a satisfactory explanation cannot be submitted shall be construed to have been sold or used."

priate state fuel taxes. That responsibility, however, is placed on the distributors as an agent of the state, not as a taxpayer. See *Wesson, Inc.* v. *Hychko*, supra, 205 Conn. 55. In *Wesson, Inc.*, our Supreme Court found that the legislature's intent in enacting § 12-458 was to impose the burden of that tax not on the distributor, but on the fuel purchaser or user, and that the distributor was responsible only for collection and payment "for the account of the purchaser . . . ." (Internal quotation marks omitted.) Id. Despite the defendants' arguments implying the contrary, that burden does not shift to the distributor simply by virtue of the distributor's failure to comply fully with statutory billing procedures.

The *Wesson, Inc.*, court held that a distributor that was compelled by the state to pay a tax that it had failed to include in its invoice to a buyer because it mistakenly believed the sale was not taxable is entitled to recover from the buyer the taxes it paid on the buyer's behalf. Id., 59. In so holding, the court stated: "We are not persuaded that the absence of an express statutory provision for reimbursement of the motor vehicle fuel tax forecloses the distributor from resorting to appropriate equitable remedies where he has been legally compelled to pay a tax the incidence of which the legislature intended to impose upon the purchaser. Where property of one person is used in discharging an obligation owed by another . . . under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee . . . . This doctrine is inapplicable where the payment has been made officiously, i.e., where the circumstances do not justify the interference with another's affairs resulting from conferring a benefit upon him. . . . A person does not act officiously when he pays another's debt under a mistake or when he has discharged an obligation for which he is also liable, but which another

should equitably have paid." (Citation omitted; internal quotation marks omitted.) Id., 56–57.

"The payment of taxes by one not primarily responsible therefor is a situation where subrogation has been permitted." Id., 57. Additionally, "[w]e have upheld the power of a court of equity to grant relief from the consequences of an innocent mistake although the mistake was not unmixed with negligence . . . where the failure to do so would allow one to enrich himself unjustly at the expense of another." (Citation omitted; internal quotation marks omitted.) *Cottiero* v. *Ifkovic*, 35 Conn. App. 682, 698, 647 A.2d 9 (*Lavery, J.*, dissenting), cert. denied, 231 Conn. 938, 651 A.2d 262 (1994).

In the present case, as in *Wesson, Inc.*, the corporation was the purchaser and consumer of the subject fuel oil and, therefore, had the primary responsibility for paying the appropriate taxes. The defendants make much of the fact that when Vitale agreed to supply fuel to them, there was an initial understanding that the oil sold would be used to fuel off-road machinery. The defendants contend that because the plaintiff was aware of the defendants' intended use for the oil, it should have properly assessed and collected the taxes from them. According to evidence adduced at trial, however, the plaintiff's billing office, in preparing the defendants' bill, relied wholly on whether the fuel delivery tickets had been marked "off-road use" in determining if the corresponding sale was taxable. Additionally, there was evidence that the defendants were aware of that procedure and failed to comply. Mistakenly believing that the sales were not taxable, the plaintiff failed to bill the defendants properly. We recognize that, unlike the situation in *Wesson, Inc.*, that mistake in billing was perhaps not unmixed with some negligence on the part of the plaintiff. Despite that distinction, the defendants would be unjustly enriched at the expense of the plain-

tiff if we allowed them to essentially pass their tax liability to the plaintiff on the basis of that mistake.

Because the defendants' claim is in direct conflict with our Supreme Court's holding in *Wesson, Inc.*, it fails as a matter of law. We conclude, therefore, that the court was legally and logically correct to have found that the legal burden of paying the tax was on the defendants.

## II

The defendants next claim that the court improperly found that they had an obligation to "report in writing [their] intended use of the subject fuel oil each time the fuel oil was received—without any proper legal basis to do so." The defendants' claim challenges the court's finding that "Louis Gherlone knew or should have known that the fuel delivery tickets which his business submitted to the plaintiff for billing should have been marked 'off-road use.' " The defendants' claim suggests that given the court's resolution of the action in favor of the plaintiff on the basis of that finding and the defendants' failure to mark the delivery tickets properly, the court, in effect, imposed a legal obligation on the defendants for which there was no legal basis. The defendants offer two arguments in support of that claim.

First, the defendants contend that the court made its finding on the basis of testimony admitted in violation of the parol evidence rule. The defendants argue that an obligation to mark the delivery tickets was neither a term of their application to open an account with the plaintiff nor of the accompanying personal guarantee and that those documents represent the entire contractual relationship of the parties. The defendants further argue that the court violated the parol evidence rule because it made that finding on the basis of Vitale's testimony that the plaintiff's procedure of marking the

delivery tickets was raised during a conversation he had with Louis Gherlone. Although we question the applicability of the parol evidence rule in this case, we decline to review the claim, as it was not properly preserved for appeal.

"Our rules of practice require that in order to preserve a ground for appeal, counsel must object to the court's ruling on the admission of evidence, state the grounds upon which the objection is made and take exception to the ruling. Practice Book [§ 5-5]. These requirements are not simply formalities. . . . They serve to alert the court to potential error while there is still time to act. . . . We are loath to assign error to a court's evidentiary ruling on the basis of objections never raised at trial." (Citations omitted.) *Sternberg* v. *Infante*, 13 Conn. App. 473, 475–76, 537 A.2d 523 (1988) (applying that principle to claimed violation of parol evidence rule). Other state appellate courts have similarly concluded that a failure to object to the admission of evidence violative of the parol evidence rule amounts to a waiver of the protection of that rule. *Pao Ch'en Lee* v. *Gregoriou*, 50 Cal. 2d 502, 326 P.2d 135 (1958); *Ross* v. *Florida Sun Life Ins. Co.*, 124 So. 2d 892 (Fla. App. 1960); *Nevada State Bank* v. *Snowden*, 85 Nev. 19, 449 P.2d 254 (1969); *Slovak Catholic Sokol* v. *Foti*, 13 N.J. Super. 458, 80 A.2d 636 (1951); see generally annot., 81 A.L.R.3d 249 (1977).

The court heard testimony from Vitale and Louis Gherlone concerning conversations between the two that occurred after the making of the application and personal guarantee. Both parties elicited such testimony. At no point during the trial did the defendants' counsel object that such testimony was improper parol evidence or that it was in any other way inadmissible and should not be considered by the court. Because the issue was not preserved properly at trial, we will not consider the defendants' claim that such testimony violated the parol evidence rule.

The defendants' second argument is that any agreement made by Louis Gherlone regarding marking the delivery tickets was not supported by additional consideration and, therefore, could not provide a legal basis for the court's finding. That claim is without merit, as it raises a defense to the enforcement of an agreement at law in an action resolved on equitable principles. Notwithstanding the merits of the claim, however, the defendants also have failed to provide an adequate record from which to review such a claim.

"It is the appellant's duty to provide an adequate record on which to base an appeal. See Practice Book §§ 60-5, 61-10. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 24–25, 804 A.2d 865 (2002). Whether an agreement was supported by adequate consideration is a factual inquiry to be made by the trier of fact in determining whether an agreement is legally binding. The defendants never raised that issue to the court either at trial, in their posttrial brief or in their motion for articulation. Nothing in the court's memorandum of decision or the record provides us with any factual or legal conclusions relevant to that issue. Accordingly, the record is inadequate for our consideration of the claim and, therefore, we decline to afford it review.

## III

The defendants' final claim is that the plaintiff's failure to include the taxes in its invoices to them during the last four years precluded them from paying the

taxes and then filing a timely claim for a refund, which they would have been entitled to under General Statutes § 12-459.[9] The defendants contend that due to that alleged prejudice, it would be inequitable to require them to reimburse the plaintiff without offsetting for the amount of the taxes it could have avoided if it had billed on time. We disagree.

In support of their claim, the defendants rely on the following dicta from a footnote in *Wesson, Inc.*: "It is possible that the delay caused by the plaintiff's failure to include the tax in its invoice at the time of the sale might have prevented the defendant from filing a claim for a refund of any portion of the tax paid on exempt fuel, such as that not used in motor vehicles licensed or required to be licensed to operate upon the public highways of this state . . . . No such claim of prejudice has been pleaded or briefed nor does the stipulation contain the facts necessary for consideration of such a claim." (Citations omitted; internal quotation marks omitted.) *Wesson, Inc.* v. *Hychko*, supra, 205 Conn. 60 n.4.

---

[9] General Statutes § 12-459 provides in relevant part: "(a) The payment of the tax provided for by section 12-458 shall be subject to refund as provided herein when such fuel has been sold for use of any of the following: (1) Any person, other than one engaged in the business of farming, when such fuel is used other than in motor vehicles licensed or required to be licensed to operate upon the public highways of this state, except that no tax paid on fuel which is taken out of this state in a fuel tank connected with the engine of a motor vehicle and which is consumed without this state shall be refunded . . . .

"(b) All claims for refund shall be accompanied by original invoices or sales receipts or other statements of fact, under penalty of false statement, showing, to the satisfaction of the commissioner, that the tax has been paid on the fuel involved in such refund, and any other information which is deemed necessary by the commissioner for the determination of such claims. Any claim for refund of said tax for fuel used during any calendar year shall be filed with the commissioner on or before May thirty-first of the succeeding year. Such claim shall be on a form prescribed by the commissioner which shall contain such information as he deems necessary for the determination of such claim. . . ."

Equitable subrogation is a remedy that "arises strictly as a matter of equity . . . ." *Wasko* v. *Manella*, 74 Conn. App. 32, 36, 811 A.2d 727 (2002), cert. granted on other grounds, 262 Conn. 942, 815 A.2d 674 (2003). The defendants' claim therefore challenges the court's fashioning of an equitable remedy. "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Our standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 155–56, 783 A.2d 1226 (2001).

In considering the defendants' claim, the court found that they were on notice that taxes were due for their use of the fuel from both the billing invoices and from Louis Gherlone's conversation with Vitale. The court also found that the defendants' failure to mark the delivery tickets properly contributed to the error in billing. There is ample evidence in the case to support those findings. In agreeing to sell oil to the defendants, the plaintiff provided a reasonable procedure for ensuring proper assessment, billing and collection of the applicable taxes. The defendants, however, failed to follow that procedure for ensuring that the taxes were billed properly. They cannot now claim prejudice from the plaintiff's failure to include taxes in the billing invoices when their failure to follow procedure was the root cause of that omission. We therefore conclude, given the facts, that the court did not abuse its discretion in

rejecting the defendants' claim that their inability to file for a tax refund should bar the plaintiff's equitable relief.

The judgment is affirmed.

In this opinion the other judges concurred.