## HARTFORD FIRE INSURANCE COMPANY *v.* SCOTT WARNER ET AL.
## (AC 25147)

Bishop, DiPentima and Berdon, Js.

Argued October 26, 2004—officially released September 27, 2005

*Stuart G. Blackburn*, with whom, on the brief, was *Erik Loftus*, for the appellant (plaintiff).

*John K. Harris, Jr.*, for the appellee (defendant Linda Warner).

*Opinion*

BISHOP, J. This appeal by the defendant tenant, Linda Warner,[1] requires us to decide whether a tenant in a duplex residence, who is party to a rental agreement that provides for her to be responsible for damage to the premises due to her negligence, may be liable in a subrogation action brought by the landlord's property insurer pursuant to a subrogation agreement with the property owner to recoup payments made by the insurer to the owner for damages caused to the leased property by the negligence of a guest of the tenant. Because we believe, under the circumstances presented in this appeal, that an action for subrogation lies, we reverse the judgment of the trial court.

The following procedural history and undisputed facts are relevant to our consideration of the issues on appeal. At all material times, Dana A. Taylor was the owner of a residential duplex located at 2-4 North Walnut Street in the Wauregan section of Plainfield. In May, 2000, the defendant leased 2 North Walnut Street from Taylor for a period of one year commencing on May 25, 2000. The parties entered into a written lease that included the following provision: "Landlord is not liable

---

[1] The record reflects that the defendant Scott Warner was defaulted and did not participate in this appeal. Accordingly, we refer in this opinion to Linda Warner as the defendant.

for loss, expense or damage to any person or property unless it is due to Landlord's negligence. Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of the Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests, and invitees." On December 5, 2000, during the term of the lease, Scott Warner, the tenant's nephew and her houseguest, negligently started a fire in the premises that resulted in damage to the premises in the amount of $43,951.

During this period, the premises were insured by the plaintiff, the Hartford Fire Insurance Company (Hartford). Pursuant to the terms of the policy, Hartford paid the amount of damages to Taylor, less a deductible, and an amount representing loss of rental income for the time period in which the premises were unavailable due to the fire damage. The contract of insurance between Hartford and Taylor contains the following relevant provision: "10. Subrogation. You may waive in writing before a loss of all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, the person insured shall sign and deliver all related papers and cooperate with us in any reasonable manner." Pursuant to this provision and after making payment to Taylor, Hartford brought this subrogation action against the Warners. After trial, the court rendered judgment in favor of the defendant, concluding that Hartford did not have a right of subrogation against her. This appeal followed.

Because the court's judgment was premised on the legal conclusion that Hartford has no right of subrogation against the defendant, our review is plenary. "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally

and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Tuxis-Ohr's, Inc.* v. *Gherlone*, 76 Conn. App. 34, 39, 818 A.2d 799, cert. denied, 264 Conn. 907, 826 A.2d 179 (2003). Additionally, when the court draws conclusions of law from its balancing of the equities, our review is plenary. *Torres* v. *Waterbury*, 249 Conn. 110, 118, 733 A.2d 817 (1999). Finally, as noted by the Supreme Court in *Wasko* v. *Manella*, 269 Conn. 527, 849 A.2d 777 (2004): "[S]ubrogation is a highly favored doctrine . . . which courts should be inclined to extend rather than restrict." (Internal quotation marks omitted.) Id., 543.

The resolution of this issue requires us to navigate the shoals of two pertinent Supreme Court decisions. The defendant relies primarily on *DiLullo* v. *Joseph*, 259 Conn. 847, 792 A.2d 819 (2002), in which our Supreme Court held that an insurer did not have the right of subrogation against a month-to-month tenant for damages negligently caused by the tenant in a multitenant commercial building when there was no agreement between the tenant and landlord regarding insurance, liability for damages or rights of subrogation. The *DiLullo* facts recited by the court are instructive: "From December 1, 1995, to December 1, 1996, the defendant occupied the premises owned by the DiLullos under a written lease, and operated a business there. After the expiration of the lease, the defendant continued to rent the premises on a month-to-month basis. There was no agreement between the parties, either in the lease or otherwise, that the defendant would insure the premises for fire or other casualty, although Michael DiLullo requested the defendant to carry liability insurance on his business contents and, at the time of the entering of the lease, the defendant provided the DiLullos with evidence of such insurance. The defendant and the DiLullos never discussed the possibility

that they would provide insurance coverage for each other, and there was no agreement that the DiLullos would relieve the defendant of liability arising from his own negligence. The defendant did not expect that any insurance that the DiLullos obtained would protect him, and he believed that his own insurance would cover his property losses and liability. Prior to the March 24, 1998 fire, the defendant had not formed an expectation that the DiLullos' policy would provide him with coverage, and he acknowledged that his liability insurance would cover damage to the DiLullos' property." *DiLullo* v. *Joseph*, supra, 259 Conn. 849–50.

In framing the issue, the court stated: "We first note that the precise issue we must resolve is: what should be the rule of law that governs in the typical default situation? That is, we recognize that tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their leases or otherwise. The question posed by this appeal, however, is what the appropriate default rule of law should be where, as here, the parties have not made such an agreement. Our strong public policy against economic waste, and the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer, lead us to conclude that, as a default rule, no such right of subrogation exists." Id., 851. Following its analysis of the relationship between the tenant and landlord, the court turned to equitable principles and held that in the absence of an agreement to the contrary, to hold a tenant of a multitenant building liable in subrogation to repay the landlord's insurer for damages to the premises would not only be beyond the ordinary expectations of parties having no specific agreement to the contrary but it would also amount to economic waste. Id., 854–55.

Subsequent to *DiLullo*, we held in *Wasko* v. *Manella*, 74 Conn. App. 32, 43–44, 811 A.2d 727 (2002), rev'd, 269

Conn. 527, 849 A.2d 777 (2004), that a single-family homeowner's insurer had no right of subrogation against a houseguest for damages he negligently caused to the premises on the ground that there was no agreement between the homeowner and his houseguest regarding the latter's liability for damages or that the homeowner's insurer would have a right of subrogation against the houseguest for his negligence. We reasoned further that to require every houseguest to carry insurance to protect himself or herself against claims arising from damages to hosts' homes caused by his or her negligence would be the sort of economic waste rejected as a matter of policy by the Supreme Court in *DiLullo*. Id., 39. On appeal from our decision, the Supreme Court disagreed and held, specifically, that we improperly had extended the analytical framework of *DiLullo*. *Wasko* v. *Manella*, 269 Conn. 527, 849 A.2d 777 (2004). In *Wasko*, the Supreme Court reframed the issues as determined by *DiLullo*. The court stated: "In *DiLullo*, the issue before this court was whether, in the absence of a specific agreement between the landlord and the tenant, the landlord's fire insurer had a right of subrogation against a tenant for negligently causing a fire that damaged the insured's property. . . . We answered that question in the negative, and affirmed the judgment rendered by the trial court in favor of the tenant. . . . Two rationales supported our conclusion: (1) [o]ur strong public policy against economic waste, which would not be served by requiring multiple insurance policies on the same piece of property; and (2) the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer." (Citations omitted; internal quotation marks omitted.) *Wasko* v. *Manella*, supra, 269 Conn. 544–45. Finding that neither of the *DiLullo* rationales existed in the *Wasko* facts, the Supreme Court reversed the judgment of this court, finding, instead, that a right of subrogation exists when

a social houseguest negligently causes a fire that damages a host's insured property. Id., 545–46.

We believe that the facts presented to the trial court in the present case are more akin to *Wasko* than to *DiLullo* and, accordingly, find that Hartford has a right of subrogation against the defendant. In distinguishing *Wasko* from *DiLullo*, the Supreme Court in *Wasko* found that the risk of economic waste was not present in a situation in which a social houseguest was likely to have a third party liability policy to protect him or her against claims arising from his or her negligence while a guest in another's home. Id. More to the point, we believe, *DiLullo* involved a multitenant commercial building while *Wasko* involved a single-family residence. As noted by the *DiLullo* court, the greater the number of tenants, the greater the risk of economic waste. *DiLullo* v. *Joseph*, 259 Conn. 854. The court in *DiLullo* opined that a rule that required every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant would constitute economic waste. Id. The court continued: "This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants." Id. The court concluded: "We think that our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." Id.

Here, unlike *DiLullo*, the public policy against economic waste is not reasonably implicated. Rather, in this instance, the court was faced with a duplex residence, not a multitenant building. At most, the realization of a right of subrogation may cause the existence

of two insurance policies on the same property, admittedly an overlap but not palpably wasteful as in *DiLullo*.

The second factor considered by *DiLullo* and *Wasko* in determining whether it would be equitable to posit a right of subrogation involved the reasonable expectations of the parties. In *DiLullo*, the court found: "The possibility that a lessor's insurer may proceed against a lessee almost certainly is not within the expectations of most landlords and tenants unless they have been forewarned by expert counseling." (Internal quotation marks omitted.) *DiLullo* v. *Joseph*, supra, 259 Conn. 852. In contrast, the court in *Wasko* found that social houseguests "do not proceed with the same lack of expectations regarding personal responsibility for negligent conduct as do tenants. Put another way, we believe that most social guests fully expect to be held liable for their negligent conduct in another's home—whether that conduct constitutes breaking the television, causing physical injury, or burning the house down. Unlike tenants, social guests have not signed a contract with the host, they have not paid the host any set amount of money for rent, and, accordingly, they do not have the same expectations regarding insurance coverage for the property as do tenants. In sum, the equitable concerns that led this court to preclude subrogation in the context of landlord and tenant simply are not present in the context of houseguest and host." *Wasko* v. *Manella*, supra, 269 Conn. 547. While at first blush this language would appear to support the defendant's position because the defendant is a tenant, we believe the proper focus is on the expectations of the parties and not on their particular relationship. Here, the agreement between the parties belies any claim by the defendant that she did not expect to be held accountable for her negligent acts or those of her houseguests. As noted, the parties' lease stated: "Landlord is not liable for loss, expense or damage to any person or property unless

it is due to Landlord's negligence. Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests and invitees." Thus, by the terms of the lease it was plainly within the contemplation of the defendant that she would be liable for damages caused by her acts and those of her guests.

Finally, the *Wasko* court echoed a belief it expressed in *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 372–73, 672 A.2d 939 (1996) that, "in an equitable subrogation matter, '[t]he insurer was not acting as a mere volunteer; rather, it was obligated by a preexisting contract of insurance to pay the losses of its insured. Upon such payment, the insurer became subrogated to any rights that its insured might have had against the party who had caused the loss. The tortfeasor, who was the party primarily liable for the losses sustained by the insured, benefited by the insurer's payment of a debt truly owed by the tortfeasor. We see no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage, and thus to escape all liability for its wrongdoing, simply because the insurance company was not permitted to participate in a suit against the tortfeasor in order to recover the money that it had paid to its insured but which was properly payable by the tortfeasor.' " *Wasko* v. *Manella*, supra, 269 Conn. 548. Here, as in *Wasko* and in *Westchester*, the landlord could have pursued the tenant directly for damages to the premises caused by the tenant's houseguest. As in *Wasko* and in *Westchester*, it would be inequitable to permit the landlord to make a claim against the tortfeasor, but not to permit the landlord's insurer, who has paid the claim, to step into the shoes of the property owner in order to attempt to recoup its

losses. This is particularly true when, as in this instance, holding the responsible parties liable would not violate the policy against economic waste.

Thus, *Wasko* both contained and refined *DiLullo*. As a consequence, subrogation will lie in favor of a property insurer who has a subrogation agreement with the property owner, where a tortfeasor has a reasonable expectation that he or she will be held liable for the consequences of his or her negligence, and where, to do so, would not violate the public policy against economic waste, but would, instead, further a public policy that favors subrogation.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion DiPENTIMA, J., concurred.

BERDON, J., dissenting. I respectfully disagree with the conclusions of the majority and, accordingly, would affirm the judgment of the trial court. The following is a summary of the facts underlying this appeal. The plaintiff, Hartford Fire Insurance Company, issued a fire insurance policy on a home owned by Dana A. Taylor in the Wauregan section of Plainfield. Under the terms of the policy, the plaintiff had subrogation rights from its insured, Taylor. The house was leased to the defendant Linda Warner.[1] The lease between Taylor and the defendant was silent with respect to any subrogation rights in favor of the plaintiff insurer. The lease, however, did provide: "Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. Tenant

[1] Throughout this dissent, the term defendant refers only to Linda Warner. Scott Warner, her nephew, was a defendant in the underlying subrogation action, but the court rendered a default judgment against him for failure to appear. He did not participate in this appeal.

is responsible for all acts of Tenant's family, employees, guests and invitees."

A fire was accidentally started by Scott Warner, the defendant's nephew, which caused damage to the premises in the amount of $43,951. This amount together with $3150 for loss of rental was paid to Taylor, the insured, by the plaintiff under the terms of the insurance policy. The plaintiff brought an action against Scott Warner on the ground of negligence and against the defendant, the tenant, on the ground of vicarious liability, seeking reimbursement from her for the sums paid to the insured as a result of the fire under the theory that the plaintiff was subrogated to the rights of Taylor, the landlord.

"The law has recognized two types of subrogation: conventional; and legal or equitable. . . . Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid. . . . By contrast, [t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. . . . The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. . . . As now applied, the doctrine of [legal or] equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted;

internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 370–71, 672 A.2d 939 (1996). With no agreement between the parties in this case, the plaintiff's subrogation rights, if any, would have to arise under the theory of legal or equitable subrogation.

As the majority recognizes, *DiLullo* v. *Joseph*, 259 Conn. 847, 792 A.2d 819 (2002), and *Wasko* v. *Manella*, 269 Conn. 527, 849 A.2d 777 (2004), two cases relative to subrogation, must be considered in deciding this case. Both *DiLullo* and *Wasko* at first blush, seem contradictory, but under appropriate analysis, they are distinguishable.

In *DiLullo*, our Supreme Court held that in the absence of a specific agreement, subrogation was not allowed. *DiLullo* v. *Joseph*, supra, 259 Conn. 853–55. As the court explained, two rationales supported its conclusion: (1) the strong public policy against economic waste, which would not be served by requiring multiple insurance policies on the same piece of property, and (2) the likelihood that a tenant does not expect to subrogate his landlord's insurer. Id., 851.

In *Wasko*, a social guest, who was allowed to use the home of an insured for a weekend, lit a fire in the fireplace, and the next day, "emptied the ashes and embers into a paper bag, which he placed outside on the porch. After he departed, the house caught fire and was substantially destroyed. The fire marshal of the town of Goshen determined that the ashes and embers in the bag had caused the blaze." *Wasko* v. *Manella*, supra, 269 Conn. 529. The *Wasko* court held that under those circumstances, an insurer could proceed against the guest under the subrogation clause in the insured's policy, even though there was no agreement between

the landlord and the social guest permitting such subrogation. Id., 549–50.[2]

This case fits the mold of *DiLullo*, not that of *Wasko*. As in *DiLullo*, the defendant was a tenant. Indeed, as our Supreme Court pointed out in *Wasko*, "[c]ontrary to the protestations of the defendant's counsel at oral argument before this court, we are convinced that social houseguests do not proceed with the same lack of expectations regarding personal responsibility for negligent conduct as do tenants. Put another way, we believe that most social guests fully expect to be held liable for their negligent conduct in another's home—whether that conduct constitutes breaking the television, causing physical injury, or burning the house down. Unlike tenants, social guests have not signed a contract with the host, they have not paid the host any set amount of money for rent, and, accordingly, they do not have the same expectations regarding insurance coverage for the property as do tenants. In sum, the equitable concerns that led this court to preclude subrogation in the context of landlord and tenant simply are not present in the context of houseguest and host." Id., 547. Unless we are willing to distinguish a residential tenant

---

[2] Although *DiLullo* and *Wasko* are distinguishable, I feel compelled to note that I believe *Wasko* was wrongly decided, and I fully agree with the majority in *Wasko* v. *Manella*, 74 Conn. App. 32, 811 A.2d 727 (2002), rev'd, 269 Conn. 527, 849 A.2d 777 (2004). The reasoning of the majority in *Wasko* v. *Manella*, supra, 74 Conn. App. 32, is persuasive. Unless there is an agreement between the property occupant (whether it be a social guest or tenant) and the insured of that property, the insurer should not be allowed to proceed against third parties under a theory of subrogation. Furthermore, an insurer is "[t]he party to a contract of insurance who assumes the risk and undertakes to indemnify the second party known as the insured or to pay a certain sum on the happening of a specific contingency." Ballentine's Law Dictionary (3d Ed. 1969). The insurer is fully compensated by the property owner for the risk it assumes. It appears that *Wasko* v. *Manella*, supra, 269 Conn. 527, was influenced by the dissenting judge in *Wasko* v. *Manella*, supra, 74 Conn. App. 44 (*Peters, J.*, dissenting), who recognized that she was "not on the side of the angels in [the] case" with which I agree.

from a commercial tenant, which I am unwilling to do, we must, under *DiLullo*, affirm the trial court's judgment.

Accordingly, I respectfully dissent.