MIDDLESEX MUTUAL ASSURANCE COMPANY *v.*
BRIAN VASZIL ET AL.
(SC 17493)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued May 19—officially released July 11, 2006

*Charles E. Hickey*, for the appellants (named defendant et al.).

*J. Scott Scherban*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly determined that the residential lease in question created a right of subrogation and a consequent obligation by the tenant to the landlord's insurance company for a fire loss that the tenant allegedly had caused to the landlord's apartment building. The plaintiff, the Middlesex Mutual Assurance Company, brought this action in subrogation of the right of its insured, Hunting Lodge Partners, LLC (Hunting), to compensation from the defendants Brian Vaszil and Robert Vaszil.[1] The trial court rendered summary judgment in favor of the defendants on the ground that the lease between the defendants and Hunting did not establish a right of subrogation and, therefore, the defendants had no obligation to the plaintiff for the fire loss that Brian Vaszil allegedly had caused to Hunting's apartment building.

On appeal to the Appellate Court, the plaintiff claimed that the trial court improperly had rendered summary judgment for the defendants on the issue of subrogation because, according to the plaintiff, the terms of the written lease "demonstrate[d] the defendants' expectations that the tenant would be liable to the landlord for damage caused to the premises, thereby making subrogation appropriate." *Middlesex Mutual Assur-*

---

[1] The plaintiff also named Lauren Guzy, a social guest at Brian Vaszil's apartment at the time of the fire, as a defendant in the subrogation action. Guzy is not involved in this appeal. Therefore, in this opinion, we refer to Brian Vaszil and Robert Vaszil as the defendants.

*ance Co.* v. *Vaszil,* 89 Conn. App. 482, 484, 873 A.2d 1030 (2005). The Appellate Court agreed with the plaintiff and, therefore, reversed the judgment of the trial court. Id.

We thereafter granted the defendants' petition for certification to appeal to this court limited to the following question: "Did the Appellate Court properly conclude that the plaintiff was entitled to subrogation for the fire loss under the circumstances of this case?" *Middlesex Mutual Assurance Co.* v. *Vaszil,* 275 Conn. 911, 882 A.2d 673 (2005). We conclude that the language of the defendants' lease with Hunting was not sufficient to permit the plaintiff to bring a subrogation claim against the defendants because the lease contained no express provision establishing such a right.

The Appellate Court's opinion sets forth the following relevant facts. "In 2001, Brian Vaszil was a student at the University of Connecticut. He occupied one unit of an apartment building at Hunting Heights in Storrs, pursuant to a written lease with the owner, Hunting . . . . Robert Vaszil, Brian Vaszil's father, cosigned the lease as a guarantor. . . . The lease between Hunting and the defendants required that the tenant not damage the apartment, repair any damage prior to leaving the building and reimburse Hunting for any amount expended to fix damage.[2] The lease did not contain the

---

[2] The lease provides in relevant part: "5. CARE OF APARTMENT. You will keep the [a]partment, surrounding areas and all fixtures and appliances in a clean and safe condition . . . . You will not destroy or damage any part of the [a]partment . . . .

"8. DAMAGE TO APARTMENT. You will not have to pay rent for any time that your use and enjoyment of the [a]partment is substantially affected because the [a]partment or the building is damaged by fire or other casualty. However, you will pay rent if you caused the damage or destruction or if you continue to occupy any portion of the [a]partment. Your rent shall be reduced by the decrease in the fair rental value of the [a]partment. If any part of the [a]partment or building is damaged by fire or other casualty, we shall have the right to cancel this lease . . . .

"11. REMOVAL OF PROPERTY. When this lease ends, you will leave the [a]partment and remove all your property and the property of others and

word subrogation or a specific provision stating that Hunting's insurer had a right of subrogation." *Middlesex Mutual Assurance Co.* v. *Vaszil*, supra, 89 Conn. App. 484–85. "The plaintiff provided insurance for Hunting. The insurance policy specified that if Hunting had any right to recover damages from another party, those rights were deemed transferred to the plaintiff to the extent that it paid Hunting. It also required Hunting to do everything necessary to secure those rights and to do nothing after the loss to impair them." Id., 484.

"On December 8, 2001, the apartment building was damaged in a fire for which the plaintiff subsequently paid Hunting in excess of $250,000. The plaintiff alleged that Brian Vaszil negligently lit and maintained a candle in his unit while he entertained a female guest. On February 15, 2002, the plaintiff brought this action in subrogation against Brian Vaszil and against Robert Vaszil as guarantor of the lease. The defendants filed a motion for summary judgment, arguing that the plaintiff had no right of subrogation. On October 28, 2003, the [trial] court denied the motion. On November 14, 2003, the defendants filed a motion to reargue and, on April 21, 2004, the court rendered summary judgment in favor of the defendants. The court found that the provisions of the lease obligating the tenant to refrain from causing damage to the apartment and to repair such damage did not create an express agreement obligating the tenant to the landlord's insurer for the fire loss." Id., 485.

Thereafter, the Appellate Court noted that, under *DiLullo* v. *Joseph*, 259 Conn. 847, 853, 792 A.2d 819

leave the [a]partment in good and clean condition and repair any damage caused by yourself or others. . . .

"13. DEFAULT. . . . If you do not do any of the things you promise to do under this lease, you will pay us the amount that we pay to do the things that you did not do. . . .

"16. SECURITY DEPOSIT. . . . If you are in default under this lease, we may use the security deposit to pay the rent or other money you owe us under this lease. . . ."

(2002), "whether subrogation would or would not apply ordinarily would depend . . . on a case-by-case analysis of the language of the insurance policies and leases involved." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Vaszil*, supra, 89 Conn. App. 487. The Appellate Court then turned to the lease, concluding that its provisions obligating the defendants to repair or to pay for any damage they caused were sufficient to permit subrogation. Id., 487–88. It rejected the defendants' contention that *DiLullo* and public policy require that the lease contain express subrogation language creating such a right. Id., 488–89. The court reasoned that the tortfeasor, who was on notice of his liability for damages, otherwise would be unjustly enriched and should not benefit simply because the landlord had the foresight to obtain insurance coverage. Id., 489–91. Judge Dranginis dissented, contending that neither the law of equitable subrogation, as expressed in *DiLullo*, nor the tenets of contract construction supported a right of subrogation in the present case. Id., 491 (*Dranginis, J.*, dissenting). This certified appeal followed.

On appeal to this court, the defendants contend that *DiLullo* requires *specific, express language* conferring on an insurer the right of subrogation against a tenant in order to allow the plaintiff to bring the present subrogation action. We agree with the defendants and the trial court in this case that "the provisions of the lease obligating the tenant not to cause damage to the apartment and to be responsible for repairing any such [damage] . . . do not rise to a level of creating an express agreement noticing and obligating the tenant to be responsible for the fire loss . . . [and] that no other provision of the lease creates such an obligation."

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if

the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 733, 873 A.2d 898 (2005).

Because it controls the disposition of this case, we begin, and indeed end, with *DiLullo* v. *Joseph*, supra, 259 Conn. 848, in which we held that an insurer did not have the right of subrogation against a month-to-month tenant for damages negligently caused by the tenant in a multiunit commercial building when there was no agreement in the lease or otherwise between the tenant and landlord regarding insurance, liability for damages or rights of subrogation. In framing the issue, "[w]e first note[d] that the precise issue we must resolve is: what should be the rule of law that governs in the typical default situation? That is, we recognize that tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their leases or otherwise. The question posed by this appeal, however, is what the appropriate default rule of law should be where, as here, the parties have not made such an agreement. Our strong public policy against economic waste, and the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer, lead us to conclude that, as a default rule, no such right of subrogation exists." Id., 851. Thereafter, following our analysis of the relationship between the tenant and

landlord, we turned to equitable principles and reasoned that, in the absence of an agreement to the contrary, to hold a tenant of a multiunit building liable in subrogation to repay the landlord's insurer for damages to the premises not only would be beyond the ordinary expectations of parties having no specific agreement to the contrary, but also would amount to economic waste. Id., 854–55. We explained that, "[s]uch a rule would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant" and that "[this] waste would be compounded by the number of tenants." Id., 854. We concluded, therefore, that, "our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." Id. Accordingly, we held that, "in the absence of an express agreement between the parties covering the question, there is no right of subrogation on the part of a landlord's fire insurer against a tenant of the landlord's premises." Id., 850–51. "[S]uch an agreement generally may be evidenced by the parties' lease . . . ." Id., 851 n.4.

Therefore, we turn to the lease in the present case between the defendants and Hunting. As a contract, a lease is subject to the same rules of construction as other contracts. "In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly

intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 275, 709 A.2d 558 (1998).

As the majority in the Appellate Court implicitly acknowledged, the lease in the present case does not contain the word subrogation or any other express[3] language indicating that the plaintiff, as the landlord's insurer, had the right to proceed against the defendants for damage negligently caused to Hunting's property. Because *DiLullo* demands an express agreement between a landlord and a tenant for the landlord's insurer to bring a successful action against a negligent tenant, in her dissenting opinion, Judge Dranginis noted, "[t]hat acknowledgment alone is sufficient to affirm the judgment of the trial court. The majority, however, has scrutinized the contract to infer an agreement between [Hunting] and the [defendants] regarding subrogation. *DiLullo* does not permit the inference of such an agreement. At best, the lease is ambiguous as to a tenant's responsibility for damage negligently caused." *Middlesex Mutual Assurance Co.* v. *Vaszil,* supra, 89 Conn. App. 499–500. Drawing on our well established principles of contract interpretation; see *Levine* v. *Advest, Inc.,* 244 Conn. 732, 746, 714 A.2d 649 (1998) (contract is ambiguous if agreement on its face is reasonably susceptible of more than one interpretation); *Rund* v. *Melillo,* 63 Conn. App. 216, 220, 772 A.2d 774 (2001) ("[c]ontract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference

---

[3] Black's Law Dictionary (6th Ed. 1990) defines the word "express" as "[c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. . . . Declared and distinctly stated. Made known distinctly and explicitly, and not left to inference. . . . Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct. The word is usually contrasted with 'implied.' " (Citation omitted.)

of opinion" [internal quotation marks omitted]); Judge Dranginis, in her dissent, then pointed to various provisions in the lease demonstrating such ambiguity. We agree with the dissent.

In *DiLullo* v. *Joseph*, supra, 259 Conn. 851–53, we embraced the leading case for the proposition that there is no right of subrogation against a tenant by a landlord's insurer in the absence of a *specific* agreement to the contrary, *Sutton* v. *Jondahl*, 532 P.2d 478, 482 (Okla. App. 1975), and concluded, in accordance with the weight of authority, that the *Sutton* rule is sound as a matter of subrogation law and policy. "The possibility that a lessor's insurer may proceed against a lessee almost certainly is not within the expectations of most landlords and tenants unless they have been forewarned by expert counseling. When lease provisions are either silent or ambiguous in this regard—and especially when a lessor's insurance policy is also silent or ambiguous— courts should adopt a rule against allowing the lessor's insurer to proceed against the tenant. R. Keeton & A. Widiss, Insurance Law (1988) § 4.4 (b), pp. 340–41." (Internal quotation marks omitted.) *DiLullo* v. *Joseph*, supra, 852.

The lease in the present case does not remotely inform the defendants that they would be liable to their landlord's insurer for any casualty fire damages to the landlord's building. It informs them neither of the need to insure only their apartment,[4] nor of the need to obtain insurance in an amount sufficient to cover the value of the entire multiunit apartment building. Rather, the only mention of insurance in the lease is the provision prohibiting them as tenants from bringing anything into their apartment that would cause the *landlord's* insur-

---

[4] Given that the lease does not address the defendants' obligations regarding insurance as to the apartment leased to Brian Vaszil, we need not address an ambiguity in the record regarding whether the damages sought by the plaintiff in this case pertained solely to that unit or to other parts of the apartment building.

ance rates to increase.[5] This provision, however, implies that the landlord has procured casualty and property insurance and, by operation of the principle inclusio unius est exclusio alterius, suggests that *only* the landlord is expected to carry insurance. Therefore, the lease in the present case not only fails to put a tenant on notice that the landlord's insurer has a right of subrogation for any loss benefits paid, it also neglects to put a tenant on notice that he or she should obtain insurance coverage for a catastrophic loss, in other words, a loss extending beyond the tenant's individual apartment.

Although the lease informs the defendants that they may not damage any part of the apartment and that they will be responsible for rent in the event they damage the apartment; see footnote 2 of this opinion; these terms suggest that, if a tenant causes any such damage, then he or she would be liable to pay only the party to whom rent is owed, namely, the landlord, and would be liable only for rent and nothing else. Furthermore, although the lease gave notice to a tenant of his or her duty to repair damage to the apartment and that, in case of a tenant's default, the landlord reserved the right to keep the security deposit to pay for rent or other money owed under the lease, these provisions strongly suggest that a tenant's liability would be limited to the amount of his or her security deposit. See footnote 2 of this opinion. The final relevant provision, which obligates the tenant, in the event that he fails to comply with his obligations under the lease, to "pay [the landlord] the amount that [the landlord] pay[s] to do the things that [the tenant] did not do," when read in conjunction with the sole insurance provision implying that the landlord has procured insurance, suggests that the landlord will

[5] Paragraph twelve of the lease provides in relevant part: "You agree to comply with the following rules and regulations . . .

"(g) You will not bring into the [a]partment anything which increases costs for fire or liability insurance. . . ."

not have to "pay" anything should a tenant cause damage to the property in derogation of the lease. These provisions and the reasonable inferences drawn therefrom are far from an *express* agreement between the landlord and tenant that the landlord's insurer has a right to subrogation for losses paid to its insured and, indeed, they compel a contrary conclusion. Accordingly, the plaintiff's reliance on these various disparate provisions or any combination thereof to create an express agreement allowing the right to subrogation by the landlord's insurer fails. Because the reasoning and effect of the Appellate Court majority decision is inconsistent with *DiLullo* v. *Joseph*, supra, 259 Conn. 850–51, which requires an express or specific agreement between a landlord and a tenant regarding an insurer's right of equitable subrogation, we agree with the dissenting opinion that, "[n]ot only did the majority take on the job of construing an ambiguous contract on a motion for summary judgment, it misapplied the substantive law of equitable subrogation regarding a tenancy." *Middlesex Mutual Assurance Co.* v. *Vaszil*, supra, 89 Conn. App. 502 (*Dranginis, J.*, dissenting).

The judgment of the Appellate Court is reversed and the case is remanded with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.