******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMICA MUTUAL INSURANCE COMPANY *v.* ANDREW
MULDOWNEY ET AL.
(AC 37721)

Beach, Keller and West, Js.

*Argued February 9—officially released July 12, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Taggart D. Adams [motion to
strike]; Povodator, J. [judgment].)

*Daniel P. Scholfield*, with whom, on the brief, were
*Benjamin D. Gettinger* and *Rosalie D. Louis*, for the
appellants (defendants).

*Dennis M. Carnelli*, with whom was *Susan L. Miller*,
for the appellee (plaintiff).

*Opinion*

BEACH, J. In *DiLullo* v. *Joseph*, 259 Conn. 847, 851, 792 A.2d 819 (2002), our Supreme Court held that a property insurer was barred from maintaining an equitable subrogation action against a tenant possessing a unit in a multiunit commercial building for harm that the tenant caused to the entire building, where the lease was silent as to the possibility of subrogation. The issue in this case is whether *DiLullo* bars equitable subrogation in the different circumstances presented.

The defendants, Andrew Muldowney and Kalynn Tupa, appeal from the judgment of the trial court in favor of the plaintiff, Amica Mutual Insurance Company. The trial court held that *DiLullo* did not bar the action. We agree, and conclude that an action in equitable subrogation was cognizable in the circumstances of this case.

In 2011, the plaintiff insurer commenced a subrogation action against the defendant tenants. The plaintiff claimed that it had indemnified the owner of the premises for property damage caused by the tenants and it sought to recover from them the amounts which it had paid on behalf of the insured owner, John Mihalec, to repair the damage. The action sounded in breach of contract and negligence. The defendants filed a motion to strike the complaint. The motion challenged the legal sufficiency of the complaint; specifically, it alleged that the plaintiff had failed to allege an express agreement between the landlord and tenant recognizing that an insurance company may have the ability to bring a subrogation action. In a September 13, 2011 memorandum of decision, the court, *Hon. Taggart D. Adams*, judge trial referee, denied the defendants' motion to strike, reasoning that "the lease executed by the defendants put them on notice that they would be liable for more than just the rent and security deposit under certain circumstances," and that the "default rule," as expressed in *DiLullo*, did not bar the action.

The matter was referred to an attorney trial referee for fact finding pursuant to General Statutes § 52-434 (a) (4) and Practice Book § 19-2A. Following a trial, the referee issued a report dated January 24, 2014. The referee found as follows. On April 29, 2009, the defendants entered into a lease with Mihalec, the owner of residential premises at 7 Hervey Street in Greenwich. The defendants left the premises on December 21 or 22, 2009, and returned on January 5, 2010. During their absence, a radiator burst, causing extensive water damage to the premises. Mihalec filed a claim with his property insurer, the plaintiff, which expended sums to repair the premises. The referee declined to consider the claims of breach of contract and negligence. Rather, the report concluded that the default rule expressed in *DiLullo* v. *Joseph*, supra, 259 Conn. 847, mandated that,

in order for the plaintiff to have the ability to maintain an action in equitable subrogation, the lease agreement between the defendants and Mihalec must have contained a provision expressly authorizing subrogation. Because the lease agreement contained no such express subrogation provision, the plaintiff could not prevail on its claims against the defendants.

The court, *Povodator, J.*, suo motu, moved to accept the referee's report. The plaintiff filed an objection. In an October 8, 2014 memorandum of decision, the court declined to accept the report. The court noted that the function of an attorney trial referee is to find facts and that it is the responsibility of the Superior Court to draw legal conclusions from the facts found. The court concluded that the provisions of the lease were sufficient to avoid the default rule in *DiLullo*, and that the defendants lawfully could be liable for losses resulting from their negligence or breach of contract. The court remanded the case to the referee for further factual findings regarding liability and damages.

The referee found the following relevant facts in a second report. The parties entered into a lease agreement for the premises, which contained provisions obligating the tenants to pay for heating fuel, to use the heating and cooling systems in a prudent manner, not to negligently or wilfully damage the premises, and to pay all damages arising from a broken promise under the lease.

As noted previously, the defendants left the premises vacant for approximately two weeks in December, 2009, and January, 2010. The defendants failed to provide for a sufficient amount of oil for the furnace to operate during their absence. During the defendant's absence from the premises, the furnace stopped functioning. For a period of time, there was no heat in the premises, and a radiator on the second floor froze. The radiator burst, causing extensive water damage to the lower floor of the premises. Mihalec filed a claim with the plaintiff, which expended sums to repair the premises. The referee recommended that judgment enter in favor of the plaintiff in the amount of $61,302.70.

The court moved, suo motu, to accept the second report. Neither party filed an objection. In a February 5, 2015 memorandum of decision, the court adopted the procedural and factual summary contained in the first report and concluded that the findings in the second report as to breach of lease obligations and negligence led it to conclude that judgment should enter in favor of the plaintiff as against both defendants on all four counts of the complaint in the amount of $61,302.70. This appeal followed.

On appeal, the defendants challenge the court's October 8, 2014 decision denying the motion to accept the referee's first report, and its February 5, 2015 decision

rendering judgment in favor of the plaintiff.[1] The court rejected the referee's conclusion in the first report that the subrogation was not appropriate in the circumstances of this case; and the court accepted the referee's second report, which found the defendants liable. The substance of each of these claims is the same. The defendants argue that the default rule set forth in *DiLullo* precludes subrogation.[2]

Our review of the court's legal conclusion, that an ability to pursue subrogation existed, is plenary. "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Hartford Fire Ins. Co.* v. *Warner*, 91 Conn. App. 685, 687–88, 881 A.2d 1065, cert. denied, 276 Conn. 919, 888 A.2d 99 (2005),

"The law has recognized two types of subrogation: conventional; and legal or equitable. . . . Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid. . . . By contrast, [t]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. . . . The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Citations omitted; internal quotation marks omitted.) *Wasko* v. *Manella*, 269 Conn. 527, 532, 849 A.2d 777 (2004).

In *DiLullo* v. *Joseph*, supra, 259 Conn. 851, our Supreme Court addressed the question of whether the insurer of the owner of commercial premises could pursue an equitable subrogation action against a tenant for property damage caused by the tenant, where there was no authorization to do so in the leasing documents. In *DiLullo*, the tenant leased but one unit in a multiunit building. Holding that the landlord and the tenant were not deemed to be coinsureds under the landlord's policy, the court also held that whether subrogation was appropriate was to be decided on a case-by-case analysis of the circumstances of each case. Id., 853. The court established the default rule that, in the absence of agreement to the contrary, a landlord's insurer has no right of subrogation against the landlord's tenant. Id., 854. In doing so, it stated: "[W]e recognize that tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their

leases or otherwise. The question posed by this appeal, however, is what the appropriate default rule of law should be where, as here, the parties have not made such an agreement. Our strong public policy against economic waste, and the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer, lead us to conclude that, as a default rule, no such right of subrogation exists." (Footnote omitted.) Id., 851.

In *Wasko* v. *Manella*, supra, 269 Conn. 545, our Supreme Court noted that the two equitable concerns expressed in *DiLullo* were: "(1) [o]ur strong public policy against economic waste, which would not be served by requiring multiple insurance policies on the same piece of property; and (2) the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer . . . ." (Internal quotation marks omitted.) These concerns were not implicated in the circumstances of *Wasko*; there, a social houseguest negligently damaged a host's property and subrogation was pursued against the guest. Id., 529. The court stated that social houseguests may expect to be liable for negligent conduct in a host's home. See id., 550.

The first consideration mentioned in *DiLullo*, economic waste, is not implicated in this case. In *DiLullo* v. *Joseph*, supra, 259 Conn. 854, which involved a tenant who leased a single unit in a multitenant building, our Supreme Court stated that the strong public policy against economic waste "convinces us that it would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer. Such a rule would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. That is precisely the same value or replacement cost insured by the landlord under his fire insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants. . . . We think that our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." (Citation omitted.) Id. In *Hartford Fire Ins. Co.* v. *Warner*, supra, 91 Conn. App. 686, this court determined that an action of subrogation could be brought against a tenant in a duplex building whose guest negligently started a fire. With respect to the consideration of economic waste, the court stated: "Here, unlike *DiLullo*, the public policy against economic

waste is not reasonably implicated. Rather, in this instance, the court was faced with a duplex residence, not a multitenant building. At most, the realization of a right of subrogation may cause the existence of two insurance policies on the same property, admittedly an overlap but not palpably wasteful as in *DiLullo*." Id., 691–92. Likewise, the present case does not involve a multitenant building as in *DiLullo*, but rather involved a detached single-family residence. Although there conceivably could be two policies implicated in the present case, one paid for by the landlord and one by the renter, excessive waste is demonstrably lacking. Accordingly, the rationale in *Hartford Fire Ins. Co.* v. *Warner* applies to the present case.

The second consideration in *DiLullo*, the likely lack of expectation regarding a tenant's obligation to be subject to subrogation, is also not present. By contrast, *Middlesex Mutual Assurance Co.* v. *Vaszil*, 279 Conn. 28, 33, 900 A.2d 513 (2006), involved a subrogation claim by the landlord's insurer against a tenant in a multiunit residential building. In that case, the insurer claimed that the tenant negligently caused a fire, resulting in damages. Our Supreme Court concluded that the second *DiLullo* consideration was met because "the provisions of the lease obligating the tenant not to cause damage to the apartment and to be responsible for repairing any such [damage] . . . do not rise to a level of creating an express agreement noticing and obligating the tenant to be responsible for the fire loss . . . [and] that no other provision of the lease creates such an obligation." (Internal quotation marks omitted.) Id., 33. The court further reasoned that the lease did "not remotely inform the [tenant] defendants that they would be liable to their landlord's insurer for any casualty fire damages to the landlord's building. It informs them neither of the need to insure only their apartment, nor of the need to obtain insurance in an amount sufficient to cover the value of the entire multiunit apartment building." (Footnote omitted.) Id., 37. In *Hartford Fire Ins. Co.* v. *Warner*, supra, 91 Conn. App. 692–93, on the other hand, this court held that "the agreement between the parties belies any claim by the defendant that she did not expect to be held accountable for her negligent acts or those of her houseguests. As noted, the parties' lease stated: 'Landlord is not liable for loss, expense or damage to any person or property unless it is due to Landlord's negligence. Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests and invitees.' Thus, by the terms of the lease it was plainly within the contemplation of the defendant that she would be liable for damages caused by her acts and those of her guests."

The lease in the present case objectively created a stronger expectation of liability on the part of the tenant

than that in *Hartford Fire Ins. Co.* and surely stronger than that in *Middlesex Mutual Assurance Co.* The trial court concluded that the lease provisions between landlord and tenant "were more than adequate to meet the requirements of the holding in *DiLullo* . . . to avoid the default rule." We agree that the notice provided to the defendants in the lease was sufficient to avoid the *DiLullo* default rule.

Although the lease in the present case did not contain an express provision regarding subrogation, it is clear[3] from the lease that the defendants were to be responsible for any damage they negligently caused to the premises. The lease provided in relevant part: "[Section 4.] You agree . . . to use all electric, cooling and other systems in the Dwelling in a prudent manner . . . to not willfully or negligently destroy, deface, damage, impair or remove any part of the Dwelling or permit anyone else to do so . . . to provide and pay for personal liability insurance for your and our mutual benefit in an amount of not less than $1,000,000 for bodily injury and property damage in or about the Dwelling. You will provide us with proof of such insurance. . . . [Section 8.] You will not permit any activity in the Dwelling which creates an unusual risk of fire or other hazard. You will not allow the Dwelling to remain vacant for more than fourteen (14) consecutive days without notifying us in advance of the planned vacancy. During any such vacancy, you agree to maintain the temperature in the dwelling at not less than 60 degrees. You shall not be absolved of any of your obligations under this Lease during any such vacancy. . . . [Section 13.] If you break any of your promises in this Lease . . . you will pay us all lost rent and other damages or costs we may incur because of your broken promises. . . . [Section 21.] You will not damage the Dwelling or permit damage to be done to it. . . . [Section 29.] You will hold us harmless from any loss or claim arising out of or in connection with your use and occupancy of the dwelling and property, including court costs and reasonable attorney's fees."

The lease, then, clearly stated that the defendants were to use all heating systems in a prudent manner.[4] If the defendants broke any promise in the lease, they were to pay all damages and costs associated with that broken promise. They were required to obtain insurance and to hold the landlord harmless. The defendants had adequate notice that they could well be held liable for all costs resulting from damage to the premises negligently caused by their failure to maintain the heat properly during their vacancy. Accordingly, the court properly concluded that the policy against economic waste was not implicated in this situation involving a single family dwelling and that the lease provisions gave the defendants the reasonable expectation that they would be liable for the damages associated with their negligent maintenance of the heating system during

their absence, such that the default rule in *DiLullo* did not apply and the landlord's insurer was not barred from pursuing a subrogation action against the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants also challenged the denial of their motion to strike. At oral argument before this court, the defendant's attorney withdrew this claim.

[2] The plaintiff also argues that by failing to file an objection to the court's motion to accept the second report pursuant to Practice Book § 19-14 or otherwise, the defendants waived their claim that the court improperly granted the motion to accept the second report of the attorney referee. We disagree.

Attorney referees are fact finders, not judges and have no power to render judgments. *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 501–502, 508 A.2d 415 (1986). The reports of referees are "reviewable in accordance with well established procedures prior to the rendition of judgment by the court. Practice Book §§ 428 through 445 [now Practice Book §§ 19-1 through 19-19]. . . . [T]he trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.) *Dills* v. *Enfield*, 210 Conn. 705, 712–13, 557 A.2d 517 (1989). The absence of any objection, such as an objection to the acceptance of the referee's report pursuant to Practice Book § 19-14, precludes effective appellate review and, accordingly, factual conclusions based on the referee's report must stand. See *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 518. Practice Book § 19-14 provides that "[a] party may file objections to the acceptance of a report on the ground that *conclusions of fact* stated in it were not properly reached . . . ." (Emphasis added).

The lack of a § 19-14 motion does not prevent us from reviewing the court's legal conclusion. "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Internal quotation marks omitted.) *Paluha* v. *Braverman Group, LLC*, 80 Conn. App. 620, 627–28, 836 A.2d 1219 (2003).

The defendants filed a memorandum of law in support of the acceptance of the referee's first report; they set forth their position that the default rule in *DiLullo* applied to bar liability. The court clearly stated in its order regarding the first report that subrogation was not precluded and the default rule in *DiLullo* did not apply. It referred the matter to the referee for findings regarding the merits of the plaintiff's claims. The second report found in favor of the plaintiff on those claims. The defendants, then, preserved their claim regarding the *DiLullo* default rule, at the earlier time in the proceeding. Their failure to express their position on *DiLullo* again, after the referee issued a report on the issues of negligence, breach of contract and damages, did not serve to waive their earlier position on *DiLullo*. The issue is preserved.

The plaintiff also argues that the defendants' failure specifically to assert their position after the court's ruling on the motion to accept the first report renders their claim on appeal as to that issue unreviewable. The plaintiff has not cited persuasive authority serving to preclude the defendants from obtaining appellate review in the absence of a formal objection to the interlocutory ruling. The defendant's position was presented and argued to the trial court, which then ruled.

[3] The defendants argue that, for additional reasons, the court erred in rejecting the conclusion of the attorney trial referee's first report that the default rule in *DiLullo* applied. First, they argue that the lease provisions were ambiguous and that the referee's findings in the first report regarding the intent of the parties should prevail. In the first report, the referee concluded that an express provision in the lease allowing for subrogation was necessary under *DiLullo* and, because the lease was ambiguous in that regard, it did not meet the *DiLullo* criteria for avoiding the default rule. The trial court rejected that contention and concluded that, although the

lease did not "contain the word 'subrogation', or any derivation thereof, there is a very express allocation of liability on the defendants . . . . The defendants had ample notice that under certain expressly spelled-out conditions, they would owe Mihalec money and whether Mihalec, or [the plaintiff], which reimbursed Mihalec's loss, pursued the defendants for that money is inconsequential. The court finds that the substance of the lease agreement—that liability for losses resulting from negligence or breach of the lease fell upon the tenants—was clear."

The court did not err in declining to accept the legal conclusion contained in the attorney trial referee's first report. See *Paluha* v. *Braverman Group, LLC*, 80 Conn. App. 620, 627–28, 836 A.2d 1219 (2003) (legal conclusions of attorney trial referees have no conclusive effect). Whether the language of a contract is ambiguous is a question of law subject to plenary review. *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 669–70, 791 A.2d 546 (2002); see *David Caron Chrysler Motors, LLC* v. *Goodhall's, Inc.*, 304 Conn. 738, 746–47, 43 A.3d 164 (2012) (lease is contract). The relevant language in the lease is clear and unambiguous as to responsibilities of the defendants. Whether the contractual language satisfies the second consideration in *DiLullo* is a question of law subject to plenary review. See *Hartford Fire Ins. Co.* v. *Warner*, supra, 91 Conn. App. 687–88.

Second, the defendants contend that the court's rejection of the attorney trial referee's first report renders the attorney trial referee program pointless. We do not agree. Attorney referees are fact finders, not judges. *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 501–502. Throughout the process, the court accepted the attorney referee's factual findings but made its own legal conclusions.

Third, the defendants argue that the court improperly relied on the denial of the defendant's motion to strike as a basis for rejecting the attorney trial referee's report. We do not agree. The court interpreted *DiLullo* and its progeny and, employing de novo review, reached the legal conclusion that the lease was sufficient to avoid the default rule. In any event, it was not necessarily erroneous to reach the same result that another judge had previously reached.

[4] The lease also provided that the defendants were not to allow the dwelling to remain vacant for more than fourteen consecutive days without notifying the landlord and that during any such vacancy, the defendants would maintain the temperature in the dwelling at not less than 60 degrees. The defendants were absent from the dwelling from December 21 or 22 until January 5 of the following year. In the second report, which the trial court accepted, the attorney trial referee found that the provision of the lease relating to temperature that was breached was the provision requiring that the defendants were to use all heating systems in a prudent manner.