D'AURIA, J.
This appeal concerns the right of a landlord's insurer to use the doctrine of equitable subrogation to bring an action against a tenant for damage the tenant caused to the rented property. In DiLullo v. Joseph , 259 Conn. 847, 851, 854, 792 A.2d 819 (2002), this court announced a "default rule," pursuant to which a landlord's insurer has no right of subrogation unless the landlord and tenant have made a "specific agreement" otherwise, "leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." In the present case, the parties dispute what sort of "specific agreement" is required to overcome DiLullo 's presumption against subrogation. Id., at 854, 792 A.2d 819. Specifically, they disagree whether the lease must expressly state that a landlord's insurer has a right of subrogation against the tenant, or whether it is sufficient for the lease to notify the tenant explicitly that he is responsible for any damage to the leased property and to allocate to the tenant the responsibility to provide liability and property damage insurance. The trial court and the Appellate Court both concluded that it was sufficient for the lease to allocate to the tenant responsibility for damage caused by the tenant and to require the tenant to obtain insurance, even without a specific agreement authorizing subrogation. We agree with those courts, and we therefore affirm the judgment of the Appellate Court.
The facts as found by the attorney trial referee, and accepted by the trial court, are as follows.[1] The defendants, Andrew Muldowney and Kalynn Tupa, entered into a lease with John H. Mihalec (landlord) for use of a single-family dwelling at 7 Hervey Street in Greenwich. During the term of the lease, the defendants left the leased *953 property for an extended winter vacation lasting about two weeks. The defendants were responsible for ordering and paying for fuel for the dwelling's oil fueled heating system but had not ensured that the heating system had enough oil to operate for the duration of their absence. While they were away, the oil level dropped too low for the furnace to draw oil, and the heating system stopped working. As a result, the temperature in the dwelling fell, and pipes inside the dwelling froze and burst, causing damage.
The defendants had agreed in the lease to "pay for heating fuel," to "use all ... heating ... systems in the [d]welling in a prudent manner," and to not "[wilfully] or negligently destroy, deface, damage, impair or remove any part of the [d]welling." The defendants also agreed they would "not allow the [d]welling to remain vacant for more than fourteen ... consecutive days without notifying [the landlord] in advance of the planned vacancy." The lease required that, "[d]uring any such vacancy, [the defendants] agree to maintain the temperature in the [d]welling at not less than [sixty] degrees."
As for liability for any damage, the defendants agreed to pay the landlord "all lost rent and other damages or costs" incurred by the landlord if the defendants breached any of their promises in the lease. The lease also required the defendants to "hold [the landlord] harmless from any loss or claim arising out of or in connection with [the defendants'] use and occupancy of the [leased] property, including court costs and reasonable attorney's fees." Lastly, the defendants agreed "to provide and pay for personal liability insurance for [the defendants'] and [landlord's] mutual benefit in an amount of not less than $1 [million] for bodily injury and property damage in or about the [d]welling" and to "provide [the landlord] with proof of such insurance."
The repairs for the damage to the dwelling caused by the burst pipes cost $50,960.02. The landlord also claimed $10,342.68 in lost rent. Notwithstanding the defendants' obligation under the lease to secure insurance, the landlord also had secured an insurance policy for the dwelling from the plaintiff, Amica Mutual Insurance Company, covering certain occurrences, including losses for water damage. The landlord filed a claim under the policy with the plaintiff, which paid the landlord for the damage. The terms of the insurance policy between the plaintiff and the landlord obligated the landlord to assign to the plaintiff any rights of recovery the landlord may have against any person for any covered loss.
Pursuant to the policy, the plaintiff brought this subrogation action against the defendants to recover sums the plaintiff had paid the landlord due to the defendants' actions or omissions. The complaint alleged breach of contract and negligence by the defendants.
The defendants moved to strike the plaintiff's complaint, arguing that the plaintiff had no right of subrogation to the landlord's claims against them. The defendants relied in part on this court's decision in DiLullo v. Joseph , supra, 259 Conn. at 847, 792 A.2d 819. They contended that DiLullo adopted a default rule that a landlord's insurer has no right of subrogation against a tenant for damage to leased property unless the landlord and tenant had reached a "specific agreement" otherwise. Id., at 851, 792 A.2d 819. According to the defendants, the default rule could be bypassed only if the landlord and tenant had agreed expressly to allow subrogation.
The trial court denied the motion. The court agreed that DiLullo adopted a default rule against allowing subrogation, in *954 the absence of a "specific agreement" otherwise, but it disagreed with the defendants about the nature of the agreement required to overcome DiLullo 's presumption against subrogation. Id., at 854, 792 A.2d 819. According to the trial court, the DiLullo rule applied only when the lease agreement between the landlord and tenant was silent on whether the tenant would be held liable for damage to the leased premises. Because the lease in the present case expressly made the defendants liable for any damage they caused and, also, specifically instructed them to purchase insurance for the property for this purpose, the court determined that the DiLullo rule did not apply and did not bar the plaintiff from bringing a subrogation action. The defendants later filed an answer, again raising the lack of a specific agreement concerning subrogation as a special defense.
The trial court thereafter referred the matter to an attorney trial referee for fact finding.[2] The referee found, on the basis of the evidence, that the defendants had breached their obligations under the lease. The referee also determined that the lease established a duty of care owed by the defendants to the landlord. The referee found that they had negligently breached this duty when they failed to ensure that the oil tank had sufficient oil to operate the heating system during their extended absence from the leased property. The referee lastly determined that the defendants' breach of the lease and negligence were the cause of the plaintiff's damages, which were $50,960.02 for repairs to the dwelling and $10,342.68 for lost rent. The referee therefore recommended that the trial court render judgment in favor of the plaintiff in the amount of $61,302.70.
The trial court accepted the referee's report and rendered judgment for the plaintiff in accordance with the report. In its memorandum of decision, the trial court rejected the defendants' special defense concerning the specific agreement requirement of DiLullo .
The defendants appealed from the judgment of the trial court to the Appellate Court. They did not contest the referee's findings or the trial court's acceptance of them but, instead, renewed their argument that the plaintiff could not bring a subrogation action against them. Amica Mutual Ins. Co. v. Muldowney , 166 Conn. App. 831, 833, 142 A.3d 439 (2016). For essentially the same reasons given by the trial court, however, the Appellate Court rejected the defendants' arguments and affirmed the trial court's judgment. Id., at 841, 843-44, 142 A.3d 439.
We granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff had a right of equitable subrogation against the defendants, the residential tenants of [the plaintiff's] insured, under DiLullo v. Joseph , [supra, 259 Conn. at 847, 792 A.2d 819 ]?" Amica Mutual Ins. Co. v. Muldowney , 323 Conn. 916, 149 A.3d 497 (2016). We conclude that the Appellate Court properly applied our decision in DiLullo .
This case concerns the doctrine of equitable subrogation and how it applies in the landlord-tenant context. "The common-law doctrine of ... equitable subrogation ... enables an insurance company that has made a payment to its insured to substitute itself for the insured and to proceed against the responsible third party."
*955 Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc. , 309 Conn. 449, 455, 72 A.3d 36 (2013). Equitable subrogation ordinarily "is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.... The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.... As now applied, the doctrine of [legal or] equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Wasko v. Manella , 269 Conn. 527, 532-33, 849 A.2d 777 (2004).
Even though these principles have led us to describe subrogation as "a highly favored doctrine ... [that] courts should be inclined to extend rather than restrict";
(citations omitted) Westchester Fire Ins. Co. v. Allstate Ins. Co. , 236 Conn. 362, 372, 672 A.2d 939 (1996) ; we have applied the doctrine in a more limited manner in the context of actions brought by a landlord's insurer against a tenant. In DiLullo v. Joseph , supra, 259 Conn. at 850-51, 792 A.2d 819, we addressed whether a commercial landlord's insurer could pursue a subrogation action against a tenant for property damage when the lease was silent on whether the landlord or tenant bore responsibility for obtaining insurance for the property or paying for property damage caused by the tenant. The tenant in DiLullo leased space in a building pursuant to a written lease and, following the expiration of the term of the lease, on a month-to-month basis. Id., at 849, 792 A.2d 819. As we explained, "[t]here was no agreement between the parties, either in the lease or otherwise, that the [tenant] would insure the premises for fire or other casualty ...."[3] Id.
We concluded in DiLullo that, "as a default rule, no such right of subrogation exists" in the absence of a "specific agreement" to the contrary. Id., at 851, 792 A.2d 819. This court, however, did not expressly spell out what the "specific agreement" must consist of to overcome application of the default rule, and this ambiguity has led to the dispute in the present case. Id., at 853-54, 792 A.2d 819. Nevertheless, a review of DiLullo , and Middlesex Mutual Assurance Co. v. Vaszil , 279 Conn. 28, 900 A.2d 513 (2006), a subsequent case applying DiLullo , indicates that we were primarily concerned with ensuring that the parties' agreement put the tenant on notice that he would be responsible for any damages caused by his negligence and that he needed to purchase insurance to cover this liability.
First, this court in DiLullo framed the question presented in that appeal on the basis of whether the parties' lease allocated responsibility for damage and insurance coverage-not whether the lease authorized subrogation specifically. See DiLullo v. Joseph , supra, 259 Conn. at 851, 792 A.2d 819. We set out to resolve whether the law should favor equitable subrogation in what the opinion referred to as "the typical default situation"-when a lease is silent about whether the landlord or the *956 tenant should bear the risk of damage from a tenant's negligence and when the lease is silent about who should insure against that risk. Id. This court explained, "we recognize that tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their leases or otherwise. The question posed ... however, is what the appropriate default rule of law should be where, as here, the parties have not made such an agreement."[4] Id., at 851, 792 A.2d 819. The focus of this court's inquiry indicates that leases that expressly allocate responsibility for damage and insurance coverage would fall outside of the "typical default situation" that we considered in DiLullo and, thus, would satisfy the "specific agreement" requirement. Id.
Second, a specific agreement between a landlord and tenant allocating the risk of damage and insurance coverage responsibilities resolves the two concerns that led this court in DiLullo to adopt the presumption against subrogation. We adopted the default rule principally for two reasons: "[1] [o]ur strong public policy against economic waste, and [2] the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer" for any damage the tenant might cause to the leased property or to other properties in a multiunit building. Id., at 851, 792 A.2d 819.
As for the policy against economic waste, we reasoned that a default rule favoring subrogation when the lease was otherwise silent about insurance responsibilities "would create a strong incentive for every tenant to carry liability insurance" for the leased property in an amount the landlord might have already insured under its own policy. Id., at 854, 792 A.2d 819. Adopting a rule encouraging this duplicative insurance of the same economic interest, we reasoned, "would ... constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants." Id. Instead, we determined that the law should not encourage duplicative insurance coverage, as this would likely be against the expectations of landlords and tenants generally, but, nevertheless, we acknowledged that the parties could choose to contract around that presumption. Id. We thus explained that "our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." Id. When, as in the present case, the parties expressly agree to require the tenant to purchase separate insurance coverage for his negligence, the concerns discussed in DiLullo about encouraging waste through a default rule that favors subrogation are not implicated because the parties become responsible for any potential economic waste they have created by choosing duplicate insurance coverage.
As for the expectations of the parties, this court in DiLullo acknowledged that tenants often expect that they will be covered under any insurance policy purchased by the landlord for the leased property and, thus, presumably will not be liable for damages beyond the value of their security deposit. See id., at 851-52, 792 A.2d 819. The court further noted that some jurisdictions had relied on this expectation to conclude that a tenant was essentially a coinsured on the landlord's insurance policies, and those jurisdictions have adopted a rule against subrogation for that reason.
*957 Id., at 851, 792 A.2d 819, citing Sutton v. Jondahl , 532 P.2d 478, 482 (Okla. App. 1975). Although we disagreed that an expectation of coinsured status was justified under either insurance or contract law, we nevertheless acknowledged that the parties' expectations impacted notions of fairness, which underlie the doctrine of equitable subrogation. DiLullo v. Joseph , supra, 259 Conn. at 853, 792 A.2d 819. Thus, this court noted that "neither landlords nor tenants ordinarily expect that the landlord's insurer would be proceeding against the tenant, unless expert counseling to that effect had forewarned them." Id., at 854, 792 A.2d 819. We determined that neither good policy nor fairness supported an action for equitable subrogation if the parties had not agreed to the tenant's responsibilities in advance. See id., at 850-51, 854-55, 792 A.2d 819. When the tenant specifically agrees in the lease to be responsible for his own negligence and to purchase insurance for this purpose, however, it can hardly come as a surprise that the landlord's insurer might hold the tenant responsible for any claims the insurer pays out to the landlord for the tenant's negligence. Accordingly, neither of DiLullo 's concerns is present when the parties specifically have agreed about who should bear the risk of damage and who should obtain insurance.
Lastly, a later case applying DiLullo indicates that an express agreement allocating to the tenant responsibility for his negligence and for insurance coverage will satisfy DiLullo 's specific agreement requirement. Our decision in Middlesex Mutual Assurance Co. v. Vaszil , supra, 279 Conn. at 32, 900 A.2d 513, also involved a subrogation claim by a landlord's insurer against his tenant in a multiunit residential building. In Middlesex Mutual Assurance Co. , the insurer claimed that the tenant was negligent by causing a fire that resulted in damage to the building.
Id. The parties' lease did not contain the word "subrogation" or any provision specifically providing that the landlord's insurer had a right of subrogation against the tenant. Id., at 31-32, 36, 900 A.2d 513. Also, the lease limited the tenant's responsibility for damages to the amount of the security deposit and did not require the tenant to purchase insurance. Id., at 37-38, 900 A.2d 513.
The court in Middlesex Mutual Assurance Co. concluded that the parties' lease did not contain a "specific agreement" sufficient to satisfy DiLullo . Id., at 39, 900 A.2d 513. The opinion in Middlesex Mutual Assurance Co. admittedly contains language indicating this court might have been looking for an agreement concerning subrogation specifically,[5] but this court's analysis was broader than whether the parties had included an express right of subrogation. See id., at 37-39, 900 A.2d 513. Instead, we looked also to whether the parties' agreement had put the tenant on notice that he would be responsible for any damage he caused and that he should obtain insurance coverage for this purpose. Id., at 32, 37-38, 900 A.2d 513. Thus, this *958 court explained that "the provisions of the lease obligating the tenant not to cause damage to the apartment and to be responsible for repairing any such [damage] ... do not rise to a level of creating an express agreement noticing and obligating the tenant to be responsible for the fire loss ... [and] that no other provision of the lease creates such an obligation." (Emphasis added; internal quotation marks omitted.) Id., at 33, 900 A.2d 513. According to this court, the lease did "not remotely inform the [tenant and guarantor] that they would be liable to their landlord's insurer for any casualty fire damages to the landlord's building. It informs them neither of the need to insure only their apartment, nor of the need to obtain insurance in an amount sufficient to cover the value of the entire multiunit apartment building ." (Emphasis added; footnote omitted.) Id., at 37, 900 A.2d 513. We further observed that the "the only mention of insurance in the lease is the provision prohibiting [the] tenants from bringing anything into their apartment that would cause the landlord's insurance rates to increase." (Emphasis in original.) Id., at 37-38, 900 A.2d 513. That provision, we reasoned, implied that the landlord had procured insurance and, therefore, "not only fail[ed] to put [the] tenant on notice that the landlord's insurer has a right of subrogation ... [but] also neglect[ed] to put [the] tenant on notice that he or she should obtain insurance ...." Id., at 38, 900 A.2d 513. We therefore concluded that the DiLullo default rule precluded the subrogation action in that case. Id., at 39, 900 A.2d 513.
Our analysis in Middlesex Mutual Assurance Co. thus strongly implies that DiLullo 's specific agreement requirement may be satisfied by an agreement that the tenant will bear responsibility for his negligence and will obtain insurance for that purpose. As the decision in Middlesex Mutual Assurance Co. implicitly recognized, such an agreement by the tenant accomplishes the same ends as an express agreement concerning subrogation by the landlord's insurer. See id., at 37-38, 900 A.2d 513. The primary purpose of notifying a tenant of the potential for subrogation is to put the tenant on notice that (1) the tenant will not benefit from the landlord's insurance, if any, for harm caused by the tenant's own negligence, (2) the tenant will be held responsible for this harm, and (3) the tenant thus should obtain insurance. See id. ; see also DiLullo v. Joseph , supra, 259 Conn. at 851, 852, 792 A.2d 819
(discussing parties' usual expectations and observing that parties to lease are "free to allocate their risks and coverages by specific agreements"). An agreement shifting liability for damages and responsibility for insurance coverage to the tenant in fact more clearly and specifically informs the tenant of his responsibilities than a plain statement authorizing subrogation by the landlord's insurer. A statement simply authorizing subrogation merely specifies who is likely to bring the action against the tenant, but that information would be of minor significance when the tenant has otherwise expressly agreed to be responsible to the landlord for damages and to obtain insurance for the landlord's benefit. The tenant has no convincing basis to claim unfair surprise merely because the landlord's insurer, who covered the claim, rather than the landlord, has sought to hold the tenant responsible for the tenant's negligence. See Wasko v. Manella , supra, 269 Conn. at 546, 849 A.2d 777 ("[i]f the insured property owner can bring an action to recover for negligently caused damages against the [tenant], we see no reason why an insurer that pays for the property owner's loss cannot also bring an *959 action against the [tenant]"). We therefore conclude that an express agreement that the tenant will bear responsibility for his negligence and needs to obtain his own insurance to cover that responsibility is the kind of "specific agreement" that will overcome DiLullo 's presumption against subrogation. DiLullo v. Joseph , supra, 259 Conn. at 854, 792 A.2d 819.
Turning to the present case, we conclude that the trial court and the Appellate Court properly allowed subrogation. The parties in this case specifically allocated their "risks and coverages," in both form and substance. Id., at 851, 792 A.2d 819. They agreed that the defendants would secure a $1 million personal liability and property damage policy for both the landlord's and the defendants' "mutual benefit." The lease also provided that, if the defendants breached any of their promises in the lease, they would "pay [the landlord] all lost rent and other damages or costs [the landlord] may incur because of [the defendants'] broken promises." This is in addition to the defendants' agreement to hold the landlord "harmless from any loss or claim arising out of or in connection with [the defendants'] use and occupancy of the dwelling and property, including court costs and reasonable attorney's fees." These provisions are sufficient to put the defendants on notice that, as tenants, they would be responsible for any damages and were required to purchase their own insurance policy, for the benefit of both themselves and the landlord, which covers any damages the defendants might cause. Under these circumstances, the defendants had no expectation that the landlord or his insurer would ultimately bear responsibility for the defendants' own negligence. We therefore conclude that the parties made a specific agreement sufficient to overcome the application of DiLullo 's presumption against subrogation.
We further conclude that allowing subrogation in the present case is entirely fair and consistent with the doctrine of equitable subrogation. The defendants had the contractual obligation to secure insurance for the dwelling for the benefit of both themselves and the landlord. Quite unlike the situation in DiLullo , in which we concluded that "a tenant is not a coinsured on his landlord's fire insurance policy simply because he has an insurable interest in the premises and pays rent"; DiLullo v. Joseph , supra, 259 Conn. at 853, 792 A.2d 819 ; the parties here agreed by contract that the tenants would secure a policy for the landlord's benefit. There could therefore be no expectation on the defendants' part that their own liability would be covered by the landlord's insurance policy, or that some part of their rent payment was intended to pay for the landlord's insurance. For reasons the record does not reveal, the defendants either did not purchase insurance or their insurance policy failed to cover either them or their landlord. The defendants should not have been surprised that the landlord, or his insurance company, would seek recovery from them given their negligence and breach of the contractual duties to maintain the dwelling generally, to heat the dwelling specifically (including during vacancies), and to secure insurance. In fact, all that arguably might have exceeded the defendants' expectations is that the landlord had separate insurance covering his liability, notwithstanding the defendants' own promise to obtain it. The result here is apt; as we have said very recently, "equitable subrogation works to prevent a tortfeasor from being unjustly enriched by the fortuitous circumstance that the victim's loss is covered by an insurer."
*960 Pacific Ins. Co., Ltd. v. Champion Steel, LLC , 323 Conn. 254, 262, 146 A.3d 975 (2016) ; see also Wasko v. Manella , supra, 269 Conn. at 549, 849 A.2d 777 ("we see no logical reason for the defendant to be unjustly enriched merely because he burned down the home of a party that had the foresight to purchase fire insurance").
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

The trial court referred the matter to an attorney trial referee, who made findings of fact. See General Statutes § 52-434 (a) (4). None of the parties challenges those findings on appeal.

The trial court denied the first motion to confirm the attorney trial referee's report. The court then remanded the case to the same attorney trial referee, who submitted a second report.

The landlord in DiLullo had requested that the tenant carry liability insurance on only the tenant's business contents , and, when entering into the lease, the tenant had provided the landlord with evidence of such insurance. DiLullo v. Joseph , supra, 259 Conn. at 849, 792 A.2d 819.

This court noted in DiLullo that the "default rule" we adopted was consistent with that of the majority of jurisdictions that had addressed the question. DiLullo v. Joseph , supra, 259 Conn. at 851-52, 792 A.2d 819 (citing cases).

For example, this court observed that the lease in Middlesex Mutual Assurance Co. did "not contain the word subrogation or any other express language indicating that the plaintiff, as the landlord's insurer, had the right to proceed against the [tenant] for damage negligently caused to [the landlord's] property." (Footnote omitted.) Middlesex Mutual Assurance Co. v. Vaszil , supra, 279 Conn. at 36, 900 A.2d 513. We also, at one point, characterized the decision in DiLullo as requiring "an express or specific agreement between a landlord and a tenant regarding an insurer's right of equitable subrogation ...." Id., at 39, 900 A.2d 513. As we explain further in this opinion, however, we do not view these references as interpreting or limiting DiLullo 's holding so as to require an agreement specifically about subrogation.