******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NUTMEG HOUSING DEVELOPMENT
CORPORATION *v.* TOWN OF
COLCHESTER
(SC 19551)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued September 21—officially released December 27, 2016*

*James Stedronsky*, for the appellant (plaintiff).

*Lloyd L. Langhammer*, for the appellee (defendant).

*Robert A. White* and *Proloy K. Das* filed a brief for the Connecticut Housing Finance Authority as amicus curiae.

*Opinion*

ZARELLA, J. In this appeal, we consider whether the trial court correctly determined that the plaintiff, Nutmeg Housing Development Corporation, failed to establish aggrievement in that it failed to prove that the defendant, the town of Colchester (town), had overvalued its property for tax purposes. After a bench trial, the court found that the plaintiff had failed to establish that it was aggrieved by the town's valuation because the court found that the plaintiff's expert did not present sufficient, credible evidence to establish that the town had overvalued the property. The trial court rendered judgment for the town, and the plaintiff appealed. We conclude that the trial court's determination of credibility is supported by the record, and, thus, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff is the owner of a unique parcel of land in Colchester. The property contains a thirty-two unit apartment complex, which was built in 2008. All of the units are age and income restricted. The property is subject to a ninety-nine year restrictive covenant requiring that the property be rented only to low income, elderly individuals. Because of the restricted use of the property, investors in the development of the property are eligible to receive federal low income housing tax credits (tax credits). The federal government created this tax credit program as a means of funding the development and rehabilitation of affordable housing. Investors in these projects receive dollar for dollar tax credits in addition to normal depreciation deductions. These tax credit projects must comply with strict requirements, or else they are subject to recapture penalties.

For tax year 2011, the town assessed the plaintiff's property at approximately $2.29 million. The plaintiff challenged this assessment before the Colchester Board of Assessment Appeals (board), claiming that the property was worth only $1.3 million. The board disagreed, upholding the town's original valuation, and the plaintiff appealed from the board's decision to the Superior Court pursuant to General Statutes § 12-117a, again claiming that its property was overvalued.

Before the trial court, the plaintiff argued that the town had used an improper method for valuing the property. The plaintiff claimed that the town was required to use the method described in General Statutes § 8-216a. That provision calls for the valuation of certain low income property using an income capitalization approach, that is, determining the property's actual rental income less reasonable expenses, and then adjusting that figure by a suitable capitalization rate. See General Statutes § 8-216a (a). The plaintiff further claimed that § 8-216a does not allow the town to include

the value of the tax credits in its valuation. At the trial on the plaintiff's appeal, however, the plaintiff did not provide any evidence to the trial court to show precisely which method the town used to value the property and presented no evidence to show that the town had used the tax credits in valuing the property. Nevertheless, the plaintiff claimed that the town's valuation was excessive.

In support of its claim, the plaintiff relied on an appraisal report prepared by Christopher Italia, a certified appraiser. Italia did not, however, value the property according to the income capitalization approach described in § 8-216a. He instead reached his valuation by blending an income capitalization approach with a sales comparison approach. For the income capitalization portion of his analysis, Italia first calculated the net operating income of the property by examining the actual income and expenses of the subject property. Italia used the below market restricted rents of the subject property but adjusted the other income and expense figures on the basis of the average income and expense figures derived from other, market rate properties, in order to determine reasonable income and expense figures. He then divided the net operating income by the capitalization rate—a figure that he determined from examining other market rate properties. Notably, however, none of the properties that Italia considered in this approach was age and income restricted.[1] Italia determined that the property was worth $1.06 million under this approach. For the sales approach, Italia examined the sales prices of other comparable apartment complexes. He then adjusted those prices based on perceived differences between these properties and the subject property in an attempt to calculate the price for which the subject property would sell. Once again, however, none of the comparable properties that Italia selected was age or income restricted like the subject property. In addition, the properties Italia relied on were also much older than the subject property. At the time of the valuation, the subject property was only three years old, yet one of the properties that Italia used as a comparable was eighty-six years old. Italia determined that the value under this approach was $1.15 million. After developing both methods, Italia then took the average of the two valuations and concluded that the fair market value of the property was $1.1 million.[2]

The town then presented its own expert, Robert Silverstein, a certified appraiser, who was not the town's original appraiser of the property but had been retained as an expert for trial. Silverstein testified that the fair market value of the property was $2.5 million. Unlike Italia, Silverstein valued the property using solely an income capitalization approach, similar to the approach prescribed in § 8-216a. Also, unlike Italia, Silverstein's income capitalization analysis took into consideration

the restricted nature of the subject property. In order to determine reasonable income and expense figures, Silverstein used market rates but adjusted them to reflect the subject property's restrictions. Silverstein, however, included the value of the tax credits associated with the property when evaluating the property's income and expenses.

After the trial concluded, the parties submitted posttrial briefs. In the plaintiff's posttrial brief, it disregarded its expert's valuation of $1.1 million and claimed, instead, to perform its own valuation of the property using § 8-216a and determined that the value of the property was actually $526,940—less than one half of the value assigned by its own expert. To reach this value, the plaintiff did not rely on its own expert's income and expense figures but used different figures from a 2011 statement of operation. The plaintiff adduced no expert testimony as to why this valuation was more appropriate than that used by its expert or whether the income and expense figures that the plaintiff relied on were reasonable.

The trial court rejected the plaintiff's claims and rendered judgment for the town. In its memorandum of decision, the court did not credit the plaintiff's $526,940 valuation because it was based solely on the plaintiff's own reading of § 8-216a and was not supported by any expert testimony. The court also cast doubt on the plaintiff's claim that § 8-216a applied and on its argument that the town could not consider tax credits when valuing the property. Nevertheless, the trial court ultimately did not base its decision on either of these grounds. Instead, the trial court determined that the plaintiff had not established that it was aggrieved by the town's valuation because it found that the plaintiff's expert was not credible. The court found that Italia's opinion of fair market value was not credible because it was "based [on] unrestricted sales and rental properties *unrelated* to age and income restrictions . . . ." (Emphasis in original.) The trial court explained that "[i]t is a basic principle of law governing tax appeals that it is the burden of the taxpayer to show that he or she has been aggrieved by the action of the assessor overassessing the property. *Ireland* v. *Wethersfield*, 242 Conn. 550, 556, 698 A.2d 888 (1997). It is also recognized by our case law that, [when] the trial court finds that the taxpayer's appraiser is unpersuasive, judgment may be [rendered] in favor of the municipality *on this basis alone*. Id., 557–58. . . . [I]t is clear that Silverstein's opinion of value, based on the subject being an age and income restricted property (in contrast to Italia's opinion of value based on unrestricted property), is the more credible." (Emphasis added.) Because the trial court concluded that the plaintiff was not aggrieved, the court upheld the town's original assessment. After the court issued its memorandum of decision, the plaintiff moved for an articulation, requesting that the court

articulate the statutory formula it had used to determine the property's value. More specifically, the plaintiff asked the trial court whether § 8-216a applied and, if not, which standard of valuation the court applied and what the property's value was under that standard. The court issued an articulation, explaining that it did not apply any standard to value the property because it determined that the plaintiff did not establish that it was aggrieved by the town's valuation, and, therefore, the court was not required to determine the property's value. The court reiterated that it found that the plaintiff had failed to establish aggrievement because "Italia's opinion of fair market value of the subject property [was] based [on] unrestricted sales and rental properties *unrelated* to age and income restrictions . . . ." (Emphasis in original.) This appeal followed.

The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. In this appeal, the plaintiff claims that the trial court improperly applied the incorrect legal standard of valuation to the subject property. The plaintiff claims that the court should have applied § 8-216a to value that property and that § 8-216a does not allow for the inclusion of tax credits in the valuation of the property. In response, the town argues that the trial court did not reach the issue of valuation because it determined that the plaintiff failed to prove that it was aggrieved by the actions of the board in that the plaintiff's expert testimony was not credible, and, therefore, the plaintiff failed, as a threshold matter, to show that the town had overassessed its property. We agree with the town.

We begin with the applicable legal principles on aggrievement in a tax appeal under § 12-117a. In an appeal under § 12-117a, the trial court performs a two step function. "The burden, in the first instance, is [on] the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. . . . *Konover* v. *West Hartford*, 242 Conn. 727, 734–35, 699 A.2d 158 (1997). Thus, the trial court first must determine whether the plaintiff has offered sufficient, credible evidence that the subject property has been overvalued. If the trial court concludes that the plaintiff has not met [this] burden, the

trial proceeds no further, and the town's assessment stands." (Internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 308 Conn. 87, 99–100, 61 A.3d 461 (2013). "If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the court may render judgment for the town on that basis alone." *Ireland* v. *Wethersfield*, supra, 242 Conn. 557–58. With respect to appeals by taxpayers, "we have regularly affirmed such judgments without a showing that the town adduced affirmative evidence sufficient to demonstrate that the assessor's determination of market value was not unjust." Id., 558.

"In a tax appeal taken from the trial court to the Appellate Court or to this court, the question of overvaluation usually is a factual one subject to the clearly erroneous standard of review . . . ." (Internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, supra, 308 Conn. 100. "Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

Additionally, "[i]t is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 123, 733 A.2d 817 (1999). To reiterate, "a trial court is afforded wide discretion in making factual findings and may properly render judgment for a town based solely [on] its finding that the method of valuation espoused by a taxpayer's appraiser is unpersuasive." Id.

"Conversely, we review de novo a trial court's decision of law. [W]hen a tax appeal . . . raises a claim that challenges the propriety of a particular appraisal method in light of a generally applicable rule of law, our review of the trial court's determination whether to apply the rule is plenary. *Breezy Knoll Assn., Inc.*

v. *Morris*, [286 Conn. 766, 776, 946 A.2d 215 (2008)]. To be sure, if the trial court rejects a method of appraisal because it determined that the appraiser's calculations were incorrect or based on a flawed formula in that case, or because it determined that an appraisal method was inappropriate for the particular piece of property, that decision is reviewed under the abuse of discretion standard. See id., 775–76. *Only* when the trial court rejects a method of appraisal as a matter of law will we exercise plenary review. See id." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, supra, 308 Conn. 101–102.

Thus, in the present case, we must first determine whether the trial court reached its decision through (1) the exercise of its discretion in crediting evidence and expert witness testimony, or (2) as a matter of law. We conclude that the trial court rejected the testimony of the plaintiff's expert witness because the court found, as a threshold matter, that the plaintiff's expert was not credible and, therefore, that the plaintiff was not aggrieved. Consequently, the trial court did not base its decision on whether § 8-216a governed the property's valuation or whether associated tax credits could be included in the property's value.

This conclusion is supported by both the trial court's memorandum of decision and its articulation. The memorandum of decision illustrates that the court's disagreement with the plaintiff's valuation was based on flaws in Italia's underlying data and not on the plaintiff's reliance on any particular statutory formula. For example, the court rejected Italia's income capitalization approach because Italia relied on unrestricted market properties to determine reasonable income and expense figures for the subject property, which is age and income restricted. The trial court reaffirmed this reasoning in its articulation, in which the trial court clarified that it had rejected Italia's valuations because it found that the data he relied on were not credible, irrespective of which statutory standard applied. Accordingly, the plaintiff's claim could be resolved on this basis alone. See, e.g., *Priest* v. *Edmonds*, 295 Conn. 132, 140, 989 A.2d 588 (2010) (articulation serves to clarify "the factual and legal basis [on] which the trial court rendered its decision" [internal quotation marks omitted]). Simply put, the court rejected Italia's appraisal as not credible because it was premised on data derived from properties that were not representative of the subject property.[3] As a result, we review the trial court's credibility determination under the deferential clear error standard.

The record supports the trial court's finding. The trial court rejected Italia's valuation because he had relied on income and expense figures derived from rentals that were not age or income restricted, like the subject

property, and had failed to make any adjustment for this difference. The town's expert, on the other hand, testified that such adjustments were necessary to appropriately value the property given its restrictions. Because the trial court rejected the plaintiff's expert testimony, the plaintiff could not rely on that testimony to establish overvaluation. See *Redding Life Care, LLC* v. *Redding*, supra, 308 Conn. 104. The trial court also could have rejected the plaintiff's claim that the property was overvalued under § 8-216a because the plaintiff's expert did not value the property under the standard prescribed by that statute. Instead, the plaintiff, in its posttrial brief, performed its own calculation, under § 8-216a, but did not provide any testimony to support this calculation. Therefore, the trial court correctly concluded that the plaintiff had failed to satisfy its initial burden of establishing aggrievement under § 12-117a. See, e.g., *Ireland* v. *Wethersfield*, supra, 242 Conn. 557–58. Thus, there is no need to determine whether the town used the correct statutory formula to value the subject property. See id., 558 ("[in] appeals [pursuant to § 12-117a] by the taxpayer, we have regularly affirmed such judgments without a showing that the town adduced affirmative evidence sufficient to demonstrate that the assessor's determination of market value was not unjust"). Accordingly, we do not determine whether § 8-216a is the proper standard valuation for the subject property and leave for another day the issue of whether tax credits may properly be included in a valuation under that standard.

We therefore conclude that the trial court's determination that the plaintiff failed to establish aggrievement under § 12-117a is not clearly erroneous and that the trial court properly rejected the plaintiff's appeal.[4]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Italia's reliance on unrestricted properties could have affected the accuracy of his valuation in at least two different ways. First, Italia did not consider how the property's restrictions impacted the occupancy rate of the property; he instead based the vacancy loss figures on what would be reasonable for a market property. Unlike a market property, which competes with many other properties for tenants, the subject property is in high demand because there is no nearby competition for age and income restricted housing. The subject property, therefore, can maintain a higher occupancy rate than a market property. Second, the property generates more income through laundry services, late fees, and other sources than a market property. Italia based his additional income figures on the average for unrestricted market properties, but the subject property actually generated more than twice the amount that Italia used in his calculations.

[2] We note that Italia was unavailable to testify at trial, so the plaintiff presented testimony from one of Italia's coworkers, Josephine Aberle. Aberle testified that she did not prepare a report of her own but instead adopted Italia's report as her own. Aberle claimed to rely on the same underlying data as Italia, and she reached the same conclusions as Italia. Even though her testimony mirrored Italia's report, she claimed to have performed an independent valuation, although she acknowledged that she had not actually visited the property before reaching her conclusions. Because Aberle's testimony mirrored Italia's, the trial court focused its analysis of the plaintiff's evidence solely on Italia's report. Because the trial court did not give any independent weight to Aberle's testimony, we too address only Italia's report

in this opinion.

[3] Although the plaintiff focuses its appeal on § 8-216a, not even its own expert, Italia, solely relied on the income capitalization approach. Italia also relied on the sales comparison approach—his final valuation was a near equal blend of the two valuation methods. The record supports the trial court's disagreement with Italia's valuation derived from the sales approach. The court found that this approach was improper because Italia used comparable properties that were not age and income restricted. The comparable properties were also much older than the subject property, specifically, between thirty-four and eighty-three years older.

[4] The plaintiff raises two additional claims in its appeal. First, it claims that including the federal tax credits in the valuation of the property violates article six of the United States constitution. The plaintiff did not raise this claim before the trial court, and, accordingly, we decline to address it. "[O]nly in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 373, 752 A.2d 1000 (1998); see also Practice Book § 60-5. The plaintiff has not demonstrated such exceptional circumstances.

Second, the plaintiff argues in the alternative that, because it does not own the apartment complex located on the subject property, and because the land is subject to restrictions, its property interest has no value. After the trial concluded, the plaintiff, in its posttrial brief, for the first time claimed that another party, Amston Village, LP (Amston), was responsible for paying the property taxes. Amston leases the subject property from the plaintiff. The plaintiff claimed that, by the terms of the lease, the buildings on the property actually belonged to Amston, and, therefore, the plaintiff is responsible for paying taxes only on the land, which, due to the restrictive covenants, is valueless.

We decline to address this claim because nowhere in the plaintiff's complaint is there an allegation that the plaintiff is not the owner of the property at issue. Because the plaintiff failed to properly raise this issue in the trial court, we decline to address it. See, e.g., *Connecticut Education Assn.*, *Inc.* v. *Milliman USA*, *Inc.*, 105 Conn. App. 446, 460, 938 A.2d 1249 (2008) ("The purpose of a complaint . . . is to limit the issues at trial, and . . . pleadings are calculated to prevent surprise. . . . It is fundamental to our law that the right of a [party] to recover is limited to the allegations in his [pleadings] . . . . Facts found but not averred cannot be made the basis for a recovery." [Emphasis omitted; internal quotation marks omitted.]).