******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KOHL'S DEPARTMENT STORES, INC. *v.*
TOWN OF ROCKY HILL
(AC 42021)

DiPentima, C. J., and Moll and Bishop, Js.

*Syllabus*

The plaintiff, K Co., appealed to the Superior Court from an assessment by
the Board of Assessment Appeals for the defendant town in connection
with certain of K Co.'s personal property declarations. The trial court
sustained K Co.'s appeal, finding that K Co. was aggrieved by the tax
assessment. The court stated that pursuant to statute (§ 12-63 (b) (2)),
the depreciation schedule set forth in § 12-63 (b) (6) can be used by an
assessor only if the municipality has, by ordinance, adopted the provi-
sions of that section, and that the defendant had not adopted any such
ordinance. On appeal to this court, the defendant claimed that the court's
refusal to consider its assessor's use of the statutory depreciation sched-
ule in § 12-63 (b) (6) was incorrect and that this legal determination
likely influenced the court's finding of aggrievement and its ultimate
determination of valuation. *Held*:

1. The use of the statutory depreciation schedule set forth in § 12-63 (b) (6)
   by the defendant's assessor was legally correct; the legislature intended
   that the depreciation schedule set forth in § 12-63 (b) (6) was to be used
   by municipal assessors for purposes of standardization and uniformity,
   and, given the intent of the assessor in this matter to use the statutory
   depreciation schedule in order to achieve town wide consistency and
   uniformity in the valuation of business personal property, this court
   could not conclude that the assessor was legally barred from utilizing
   the statutory schedule.

2. The trial court's misinterpretation of § 12-63 (b) (2) was harmful and
   influenced the outcome of the case; the court's too narrow interpretation
   of § 12-63 (b) (2), foreclosed its consideration of the defendant's evi-
   dence bearing on value solely because that evidence was based on the
   statutory depreciation schedule set forth in § 12-63 (b) (6); moreover,
   the defendant was not required to offer an expert appraiser to counter
   K Co.'s opinion of value because § 12-63 (b) (2) permitted the assessor
   to rely solely on the depreciation schedule contained in § 12-63 (b) (6),
   and, accordingly, the case was remanded for a new trial.

Argued October 21, 2019—officially released February 18, 2020

*Procedural History*

Appeal from the decision of the defendant's Board
of Assessment Appeals rejecting the valuation of certain
of the plaintiff's personal property declarations,
brought to the Superior Court in the judicial district of
New Britain, Tax Session, where the appeal was tried to
the court, *Hon. Arnold W. Aronson*, judge trial referee;
judgment for the plaintiff, from which the defendant
appealed to this court. *Reversed*; *new trial*.

*Daniel J. Krisch*, with whom were *Morris R. Borea*,
and, on the brief, *Robbie T. Gerrick*, for the appellant
(defendant).

*Gregory F. Servodidio*, with whom was *Michael J.
Marafito*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this tax appeal, we are required to determine whether a municipal tax assessor is permitted to utilize the depreciation schedule set forth in General Statutes § 12-63 (b) (6)[1] to assess the personal property of a taxpayer when the municipality has not adopted by ordinance the statutory depreciation schedule as provided in § 12-63 (b) (2).[2] We answer that question in the affirmative. The defendant, the town of Rocky Hill (town), appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Kohl's Department Stores, Inc., from the town's assessment of personal property located at 1899 Silas Deane Highway, Rocky Hill (store). On appeal, the town claims that the court erred in determining that the town's tax assessor (assessor) could not utilize the depreciation schedule set forth in § 12-63 (b) (6) because the town had not adopted the statutory schedule by ordinance, which likely influenced the court's conclusion that the town had overassessed the plaintiff's personal property.[3] We agree and, accordingly, reverse the judgment of the trial court.

The following factual and procedural background is relevant to our resolution of this appeal. As required by law,[4] the plaintiff prepared and filed personal property declarations with the town as of October 1, 2014, October 1, 2015, October 1, 2016, and October 1, 2017, in which it declared the value of its retail fixtures, equipment, furniture, signage, and other items of personal property located in the store. Its declarations varied from the town's declarations with regard to the depreciation schedules used by each party to assess the value of the plaintiff's personal property.[5] The assessor rejected the plaintiff's valuation, as did the Rocky Hill Board of Assessment Appeals (board).[6] After the plaintiff's unsuccessful appeal to the board, it filed a complaint with the trial court, appealing from the assessment made by the assessor and the subsequent action of the board, pursuant to General Statutes §§ 12-117a and 12-119.[7] In its complaint, the plaintiff asserted that the assessor improperly had overvalued and overassessed the true and actual value of its personal property located in its store. The dispute centered on the different depreciation schedules employed by the parties, which resulted in dissimilar values for each year in question.

The personal property in dispute consisted of showcases used by the plaintiff in its store to display merchandise. To value the showcases, the assessor utilized the depreciation schedule set forth in § 12-63 (b) (6). The plaintiff, however, retained an outside appraisal company, Valcon Partners, Ltd. (Valcon). Douglas R. Krieser was an appraiser for Valcon. Krieser developed a depreciation schedule based on a study he conducted that related to the value of used retail showcases with-

out regard to whether the plaintiff's showcases had been designed specifically for their approach to retail presentation.

The matter was tried to the court, *Hon. Arnold W. Aronson*, judge trial referee, on November 29 and 30, 2017. At trial, Krieser testified about his approach to the valuation of the showcases, in which he considered three components to be essential in the depreciation calculation: physical deterioration, functional obsolescence, and economic obsolescence. Krieser relied on information he had received from out-of-state fixture furniture dealers in the business of reselling used showcases. He provided these dealers with a sample of the fixtures used in one of the plaintiff's typical stores and instructed them to use their experience and sales history and to consider relevant economic factors to estimate what the fixtures would sell for in a transaction between a typical buyer and seller. Although he acknowledged that he had learned that there was, in fact, no market for used custom showcases, he used the information on the market for generic showcases as a factor in determining the value of the plaintiff's showcases.

In response, the town offered no evidence as to the value of the showcases; rather, the assessor testified that he took the historic costs of the showcases, a calculation not in dispute, and applied to that cost the depreciation schedule set forth in § 12-63 (b) (6). Although he acknowledged that he was not aware if the town had enacted an ordinance adopting the statutory schedule, the assessor testified that, as a matter of fact, he assesses all personal property in the town in the same way, by taking the original cost of an asset and applying a uniform depreciation schedule to that asset.

Following trial, the court issued its memorandum of decision sustaining the plaintiff's appeal. At the outset of its analysis, the court stated that, pursuant to § 12-63 (b) (2), the depreciation schedule set forth in § 12-63 (b) (6) can be used by a municipal assessor only if the municipality has, by ordinance, adopted the provisions of that section. The court found that the town had not adopted any such ordinance. The court further observed: "The town did not offer an expert appraiser to counter Valcon's opinion of value. The only credible evidence related to fair market value that was introduced at the time of trial was that made by Valcon's appraiser and its appraisal report. Valcon's appraisal report was based on a study of factors dealing with the depreciation of in-store personal property." On the basis of the Valcon evidence and the lack of any appraisal from the town, the court found that the plaintiff was aggrieved by the tax assessment. The court's findings make clear that it did not give any weight to the assessor's evidence based on the statutory depreciation schedule solely because it concluded that the assessor

was not legally permitted to utilize the statutory depreciation schedule. On appeal, the town argues that the court's refusal to consider the assessor's use of the statutory depreciation schedule was incorrect and that this legal determination likely influenced the court's finding of aggrievement and its ultimate determination of valuation.

We begin our analysis with the applicable standard of review and a discussion of the legal principles that guide our decision. "A trial court hears tax appeals pursuant to § 12-117a de novo and must arrive at [its] own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [its] own general knowledge of the elements going to establish value . . . . We are bound by the trial court's findings of facts unless those findings are clearly erroneous, but we invoke a plenary review of any legal conclusions. We must, therefore, decide whether the conclusions are legally and logically correct, and find support in the record." (Citation omitted; internal quotation marks omitted.) *Davis* v. *Westport*, 61 Conn. App. 834, 840, 767 A.2d 1237 (2001).

"[A]n aggrieved taxpayer may appeal to the Superior Court. In a § 12-117a appeal, the court potentially performs two functions. Initially, the court determines whether the board's action aggrieved the taxpayer. . . . A taxpayer satisfactorily demonstrates aggrievement where the board's action will require the payment of an unjust and, therefore, illegal tax. . . . An affirmative finding of aggrievement is an absolute condition precedent to the second function, which involves the court's broad discretionary power to grant appropriate relief. . . . In exercising its discretion, the court should correct the valuation. . . . The issue of aggrievement involves a two part analysis, which entails both factual determinations and a question of law. Whether a specific action that the assessor takes in his valuation has aggrieved a taxpayer is a question of law. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 842. "[T]he trial court first must determine whether the plaintiff has offered sufficient, credible evidence that the subject property has been overvalued. If the trial court concludes that the plaintiff has not met [this] burden, the trial proceeds no further, and the town's assessment stands. . . . If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the court may render judgment for the town on that basis alone. . . . With respect to appeals by taxpayers, we have regularly affirmed such judgments without a showing that the town adduced affirmative evidence suffi-

cient to demonstrate that the assessor's determination of market value was not unjust." (Citations omitted; internal quotation marks omitted.) *Nutmeg Housing Development Corp.* v. *Colchester*, 324 Conn. 1, 9, 151 A.3d 358 (2016).

Having set forth the principles that guide our review, we now turn to the issue of whether a municipal tax assessor may use the depreciation schedule provided in § 12-63 (b) (6) for purposes of assessing personal property when the municipality has not adopted it by ordinance. The court, in its memorandum of decision, concluded that, "before § 12-63 (b) (6) can come into play, § 12-63 (b) (2) requires that a municipality *must*, by ordinance, adopt the provisions" thereof. (Emphasis added.) Thus, in order to determine whether the court's conclusion regarding the provision was correct, we must carefully construe the language of § 12-63 (b) (2).

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 613–14, 974 A.2d 641 (2009). Furthermore, "[t]he words of a statute are to be given their commonly approved meaning, unless a contrary intent is expressed." *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 308, 521 A.2d 1017 (1987). Finally, we note that, if the otherwise plain and unambiguous language of a statute reveals a latent ambiguity when the statute is sought to be applied to a particular situation, the court may turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity. See *Conway* v. *Wilton*, 238 Conn. 653, 665, 680 A.2d 242 (1996).

Under § 12-63 (b) (2), a municipality is vested with discretion in determining whether to adopt the depreciation schedule. The statute provides in relevant part that "[a]ny municipality *may*, by ordinance, adopt the

provisions of this subsection to be applicable for the assessment year . . . ." (Emphasis added.) The plain language unmistakably gives to the municipality the authority to adopt the depreciation schedule to assess the personal property of taxpayers. We note, however, that the statute does not explicitly limit the use of the statutory depreciation schedules only to those municipalities which have adopted them by ordinance. Thus, the statute does not answer our central question of whether the depreciation schedules devised by the legislature may be used by individual tax assessors in municipalities that have not adopted the schedules by ordinance. Because that question raises an ambiguity not apparent from the clear language of the statute, we turn to the purposes of the statute as revealed by its legislative history.

Although the legislative history does not directly answer our question, it clearly reveals that the statute's overarching purpose is to equip municipalities with the ability to adopt standardized assessment criteria. This history reflects an interest in regulating the approach to personal property assessment. During the 1999 session of the legislature when subsection (b) was first added to § 12-63, Representative Belden remarked that the bill "will start on a process of hopefully having more standardized assessment criteria for municipalities to use." 42 H.R. Proc., Pt. 17, 1999 Sess., p. 6107, remarks of Representative Richard Belden. Additionally, during discussion of the bill that would become Public Act 99-290, Representative McDonald remarked that the "bill provide[d] for uniform depreciation schedules" and that it was "not mandatory that [anyone] follow these schedules." Id., p. 6104, remarks of Representative Anne McDonald. This history supports a conclusion that the legislature intended that the depreciation schedules set forth in § 12-63 (b) were to be used by municipal assessors for purposes of standardization and uniformity, and that, although adoption of the schedules by municipalities was not being mandated, the creation of a vehicle for a standardized approach to personal property assessment was a core purpose of the legislation. Given that purpose and the intent of the assessor in this matter to use the statutory depreciation schedule in § 12-63 (b) (6) in order to achieve town wide consistency and uniformity in the valuation of business personal property, we cannot conclude that the assessor was legally barred from utilizing the statutory schedule. Indeed, it would appear that his use of the schedule is entirely consistent with the core purpose of the statute.

On this basis, we conclude that the assessor's use of the statutory depreciation schedule was legally correct. Whether the values set forth in the statute can fairly be applied to the property in question was a question of fact not reached by the trial court.

We next turn to the question of whether the court's

legal determination of aggrievement and its refusal to consider the statutory depreciation schedule as proffered by the town in response to the plaintiff's valuation claims likely influenced the outcome of this case. "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Muldowney*, 166 Conn. App. 831, 837, 142 A.3d 439 (2016), aff'd, 328 Conn. 428, 180 A.3d 950 (2018).

In the present case, the court's legal conclusion regarding the town's appraisal directly affected the outcome. As stated previously in this opinion, when determining a tax appeal under § 12-117a, the trial court performs two functions. See *Nutmeg Housing Development Corp.* v. *Colchester*, supra, 324 Conn. 9. First, the burden is on the taxpayer to demonstrate to the court that it has been aggrieved by the decision of the board in that its property has been overassessed. When determining whether the taxpayer has been aggrieved, the court considers the reports of the parties, including evidence bearing on value. If the taxpayer fails to show that it has been aggrieved, the court may enter judgment for the municipality solely on that basis. In its second function, the court, on the basis of its finding of aggrievement, has the discretion to grant appropriate relief to the aggrieved party. See *Davis* v. *Westport*, supra, 61 Conn. App. 842.

Here, the court precluded itself from properly performing these functions. First, by too narrowly interpreting § 12-63 (b) (2), the court foreclosed consideration of the town's evidence bearing on value, namely, its appraisal report, solely because it was based on the statutory depreciation schedule set forth in § 12-63 (b) (6).[8] Additionally, when considering the evidence bearing on value, the court noted that the town did not offer an expert appraiser to counter the plaintiff's opinion of value. Thus, from the court's optic, it confronted a situation in which the taxpayer offered credible evidence of valuation and the town, in turn, offered no evidence. In our view, however, the town was not required to offer an expert appraiser because § 12-63 (b) (2) permitted the assessor to rely solely on the depreciation schedule contained in § 12-63 (b) (6). Whether, in fact, those values reflect the true value of the property in question is a question the court, on remand, must determine.

Accordingly, we conclude that the court's misinterpretation of § 12-63 (b) (2) was harmful and it influenced the outcome of this case.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] General Statutes § 12-63 (b) (6) provides: "The following schedule of depreciation shall be applicable with respect to all tangible personal property other than that described in subdivisions (3) to (5), inclusive, of this subsection:

| "Assessment Year<br>Following Acquisition | "Depreciated Value<br>As Percentage<br>Of Acquisition<br>Cost Basis |
| --- | --- |
| "First year | Ninety-five per cent |
| "Second year | Ninety per cent |
| "Third year | Eighty per cent |
| "Fourth year | Seventy per cent |
| "Fifth year | Sixty per cent |
| "Sixth year | Fifty per cent |
| "Seventh year | Forty per cent |
| "Eighth year and thereafter | Thirty per cent" |

[2] General Statutes § 12-63 (b) (2) provides in relevant part: "Any municipality may, by ordinance, adopt the provisions of this subsection to be applicable for the assessment year commencing October first of the assessment year in which a revaluation of all real property required pursuant to section 12-62 is performed in such municipality, and for each assessment year thereafter. If so adopted, the present true and actual value of tangible personal property, other than motor vehicles, shall be determined in accordance with the provisions of this subsection. If such property is purchased, its true and actual value shall be established in relation to the cost of its acquisition, including transportation and installation, and shall reflect depreciation in accordance with the schedules set forth in subdivisions (3) to (6), inclusive, of this subsection. If such property is developed and produced by the owner of such property for a purpose other than wholesale or retail sale or lease, its true and actual value shall be established in relation to its cost of development, production and installation and shall reflect depreciation in accordance with the schedules provided in subdivisions (3) to (6), inclusive, of this subsection. . . ."

[3] We note that the town argues, in the alternative, that the court's reliance on the plaintiff's expert appraiser was improper because his assessment was based on market values of property for which there was no actual market and, thus, was unreliable. We do not reach this argument at this junction because its resolution is fact laden and better addressed by the court on remand.

[4] See General Statutes §§ 12-43, 12-57a, and 12-71.

[5] The plaintiff and the town calculated the following depreciated valuations of the plaintiff's business personal property:

| | Town's Value | Plaintiff's Amended Value |
| --- | --- | --- |
| October 1, 2014 | $632,457 | $546,300 |
| October 1, 2015 | $856,629 | $678,700 |
| October 1, 2016 | $911,345 | $589,600 |
| October 1, 2017 | $847,500 | $512,400 |

[6] Pursuant to General Statutes § 12-111, a taxpayer claiming to be aggrieved by the assessor of the municipality may file an appeal with the municipal board of assessment appeals for relief. Here, the plaintiff filed its appeal with the board.

[7] While the complaint was brought pursuant to both §§ 12-117a and 12-119, the plaintiff made no argument at trial and makes none on appeal relating to § 12-119. Thus, we conclude that the plaintiff, having, relied solely on § 12-117a as the basis of its complaint and in this appeal, has abandoned any claim premised on the provisions of § 12-119. See *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 426 n.2, 849 A.2d 382 (2004) (plaintiff's failure to address claims in posttrial brief resulted in abandonment of those claims); *Nation Electrical Contracting, LLC* v. *St. Dimitrie Romanian Orthodox Church*, 144 Conn. App. 808, 814 n.6, 74 A.3d 474 (2013); *Peck* v. *Milford Hunt Homeowners Assn., Inc.*, 110 Conn. App. 88, 91 n.5, 953 A.2d 951 (2008).

[8] We have stated that it is harmful for a court to discount evidence bearing on value. See *Grossomanides* v. *Wethersfield*, 33 Conn. App. 511, 515–17, 636 A.2d 867 (1994).